THE VILLAGE OF EAST SPRINGFIELD, Plaintiff in Error, *vs.* THE CITY OF SPRINGFIELD, Defendant in Error.

*Opinion filed February 19, 1909.*

1. EQUITY—*bill will lie to declare annexation election void.* A bill in chancery will lie at the suit of a village to enjoin a city from exercising the right of governing and controlling the complainant and its property as the result of an annexation election and to declare such election to be null and void.

2. STATUTES—*a general law does not repeal, by implication, a former particular law.* A subsequent law which is general does not abrogate or repeal, by implication, a prior law which is special and intended to operate on a particular subject, and if the later law does not contain negative words it will not repeal particular provisions of the earlier law on the same subject unless it is impossible that both should stand.

3. ANNEXATION—*Ballot law of 1891 does not govern annexation election.* The Annexation act of 1889 (Laws of 1889, p. 66,) was not repealed by the Ballot law of 1891, and hence in proceedings to annex territory the election should be held and the ballots prepared in accordance with the provisions of the Annexation act, and not as provided in section 16 of the Ballot law.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. OWEN P. THOMPSON, Judge, presiding.

This is a suit begun by a bill in equity filed in the circuit court of Sangamon county by plaintiff in error, the village of East Springfield, against defendant in error, the city of Springfield, praying that defendant in error be enjoined from exercising the right claimed and asserted by it to govern and control plaintiff in error and its property, and that elections held on the 10th day of September, 1907, in the village of East Springfield, and on the 7th day of April, 1908, in the city of Springfield, upon the question of annexation of the village of East Springfield to the city of Springfield, be declared null and void. The bill alleged that the village of East Springfield was a village duly organized and incorporated under the laws of the State of Illi-

nois on the 31st day of March, 1900, and that the city of Springfield is a duly organized and incorporated city under the laws of the State of Illinois; that upon the presentation to the county judge of Sangamon county of a petition signed by the necessary number of legal voters praying a, submission to the legal voters of the village of East Springfield and of the city of Springfield of the question of the annexation of said village to said city at an election to be held for that purpose, said county judge ordered that said question of the annexation of the village of East Springfield to the city of Springfield be submitted to the legal voters of said village at an election to be held on the 10th day of September, 1907, and to the voters of the city of Springfield at an election to be held on the 7th day of April, 1908; that the judge of the county court of said Sangamon county ordered that the ballots for voting upon said question of annexation at said election should be in the following form:

| | | |
|---|---|---|
| For annexation of the Village of East Springfield to the City of Springfield. | Yes | |
| Against annexation of the Village of East Springfield to the City of Springfield. | No | |

that the ballots as prepared and used at said election held in the village of East Springfield were in the following form:

OFFICIAL BALLOT.

| | | |
|---|---|---|
| FOR annexation of the Village of East Springfield to the City of Springfield. | Yes | |
| AGAINST annexation of the Village of East Springfield to the City of Springfield. | No | |

—on the back of which was the folllowing: "Ballot for and against the annexation of East Springfield to the city of Springfield.—Frank F. Thompson, Village Clerk," and that such ballots were the only ballots used at said election; that said ballots, as to legal voters wishing to vote against

annexation, were uncertain, ambiguous, misleading and tended to confuse and deceive such voters, and the bill alleges that said ballots were not in accordance with, but were contrary to, the requirements of the statute providing the kind of ballots to be used at such elections. The bill further alleges that the president and board of trustees of the village of East Springfield on the 8th day of October, 1907, filed with the clerk of the county court of Sangamon county their certificate as canvassers of the vote cast at said election, in which it was recited that there were cast "for annexation of the village of East Springfield to the city of Springfield 190 votes; against annexation of the village of East Springfield to the city of Springfield 136 votes," and that a majority of said votes cast were in favor of annexation; that the result of the vote at said election was arrived at by said board of trustees counting for annexation the ballots on which a cross was made after the word "yes" and against annexation the ballots upon which the cross appeared after the word "no." The bill alleged that the ballots used and voted at the election held in the city of Springfield upon the question of annexation were in the following form:

| Proposed question of the annexation of East Springfield, Illinois, to the City of Springfield, Illinois. | Yes | |
| Shall the Village of East Springfield, Illinois, be annexed to the City of Springfield, Illinois? | No | |

—and that said ballots were prepared by the election commissioners of the city of Springfield and placed upon the official ballots on a sheet with three other different questions submitted to be voted upon by the legal voters at said election, and that at said election in the city of Springfield a majority of those voting upon the question of annexation voted in favor thereof, as shown by the ballots and the returns of said election, but the bill avers that holding the election and preparing the ballots under the provisions of

the act of 1891, known as the Australian Ballot law, rendered the said elections illegal and void. The bill further alleges that on the 14th day of April, 1908, the city of Springfield, by its officers, seized and carried away the ladder truck, fire extinguisher, and all the fixtures thereto belonging, of the village of East Springfield, and are endeavoring and threatening to seize and carry away all other movable property of said village, and are assuming authority to exercise jurisdiction of the property, affairs and control of the government of said village of East Springfield, claiming that it is now annexed to and a part of the city of Springfield. In addition to the prayer for injunction and that the elections for annexation be declared void, the bill prays that the city of Springfield be decreed to restore to the village of East Springfield its property so taken and carried away by said city.

The city of Springfield demurred to the bill. The demurrer was sustained, and the complainant electing to stand by the bill a decree was entered dismissing it for want of equity, from which decree this appeal is prosecuted.

ED. D. HENRY, and ALFRED ORENDORFF, for plaintiff in error.

ROY M. SEELEY, City Attorney, and A. G. MURRAY, Corporation Counsel, (E. L. CHAPIN, of counsel,) for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Defendant in error's first contention is that plaintiff in error has a complete and adequate remedy at law by *quo warranto,* and that equity therefore has no jurisdiction to entertain the bill. In *Village of Hyde Park* v. *City of Chicago,* 124 Ill. 156, it was claimed by the city of Chicago that the village of Hyde Park had been annexed to said city by virtue of an election at which that question was

voted upon. The village of Hyde Park filed a bill against the city of Chicago, as stated by the court in the opinion in that case, "to restrain the city from interfering with the property and effects of the village and from attempting to exercise municipal jurisdiction within the territorial boundaries of the latter, [the village of Hyde Park,] and for other purposes. The superior court, upon the hearing, entered a decree dismissing the bill for want of equity. The complainant appealed to this court." The question of the jurisdiction of a court of equity to entertain the bill was raised in that case, and upon this question the court said (p. 160) : "Appellees insist that, conceding the facts to be as claimed by appellant, the case is not one of equitable cognizance and that the decree should be affirmed on this ground. We think otherwise. The property of the village is in the nature of a trust fund. It holds it for the use of the public, and any unlawful interference with it, calculated, as this would be, to inflict upon the community an irreparable injury in respect to it, presents a clear case for equitable relief." (Citing authorities.) *Town of Cicero* v. *City of Chicago,* 182 Ill. 301, was a bill in equity to enjoin the city of Chicago from asserting authority and jurisdiction over territory it claimed to be within its corporate limits by virtue of annexation by an election held for that purpose. The superior court sustained a demurrer to the bill and dismissed it for want of equity. This decree was affirmed by this court, not on the ground that equity had no jurisdiction to entertain a bill on that subject, but because the facts alleged in the bill and which were fully discussed in the opinion of the court did not constitute any ground for relief. *Village of North Springfield* v. *City of Springfield,* 140 Ill. 165, was also a bill for injunction to restrain the city of Springfield from exercising jurisdiction over North Springfield. The city claimed the village had been annexed at an election held in the village and the city upon that question, and the bill filed by the village of North Springfield attacked

the legality of the elections and claimed they were illegal and void. The circuit court sustained a demurrer to the bill and dismissed it for want of equity, and this decree was affirmed by this court. In that case, also, the jurisdiction of a court of equity to entertain the bill was not raised, but the decree of the circuit court sustaining the demurrer and dismissing the bill was affirmed on the ground that the facts alleged in the bill upon which it was claimed the election was illegal and void were not such, if true, as would affect the validity of the election. These authorities, we think, must be considered as sustaining the jurisdiction of a court of equity to entertain the bill filed in this case.

Authority to hold elections for the purpose of voting upon the question of annexation is conferred by the act entitled "An act to provide for the annexation of cities, incorporated towns and villages, or parts of same, to cities, incorporated towns and villages," approved and in force April 25, 1889. (Hurd's Stat. 1905, chap. 24, p. 328.) The first section of said act provides: "A petition shall be presented to the judge of the county court of the county wherein such incorporated city, town or village to which such annexation is sought is situated, asking that the question of annexation be submitted to the legal voters of the city, village or incorporated town sought to be annexed, and the legal voters of the city, village or incorporated town to which it is sought to annex the same. * * * Such question may be submitted at either a special election called for that purpose, or at any municipal election, or at any general election. * * * The ballots cast at such election to be written or printed, or partly written or partly printed, 'For annexation,' 'of' (here name the city, village or incorporated town to be annexed) 'to' (here name city, village or incorporated town to which annexation is sought) or, 'Against annexation' 'of' (here name city, village or incorporated town to be annexed) 'to' (here name city, village or incorporated town to which annexation is sought) re-

spectively, to be received, canvassed and returned the same as ballots for municipal officers of such incorporated cities, towns or villages, and the officers who are charged by law with the duty of canvassing such votes, shall file, or cause to be filed, with the clerk of the county court of such county a certificate of the result of such canvass immediately upon ascertaining the result thereof, and if it shall appear that a majority of the voters of each incorporated city, town or village so voting upon the question of annexation, at such election votes for annexation, thereupon the jurisdiction of the incorporated city, village or town, to which such other incorporated city, village or town is annexed, shall extend over said territory."

It is the contention of plaintiff in error that the ballots should have been prepared and the election held in accordance with the requirements of this section, while defendant in error contends that the provisions of said section relating to ballots to be voted at an election to be held under the act were repealed by the Ballot law of 1891 and that the ballots were required to be prepared in accordance with section 16 of said Ballot law. We are of opinion this question has been settled adversely to the defendant in error by previous decisions of this court. *People* v. *Marquiss,* 192 Ill. 377, was a proceeding by *quo warranto* to test the legality of the organization of a village. One of the grounds upon which it was claimed the organization of the village was illegal was that the election ordered by the county judge to vote upon organizing the territory into a village was not called to be held under the Ballot law of 1891. After setting out in the opinion the substance of portions of the act relating to the procedure under said act and the form of the ballot described therein "For village organization under the general law" or "Against village organization under the general law," the court said (p. 380) : "This act is special in its nature and applies only to a particular

class of elections,—the organization of villages under the general law,—and was not repealed by the Ballot law passed in 1891."

*Village of Ridgway* v. *Gallatin County*, 181 Ill. 521, involved the legality of an election held upon the question of the removal of the county seat from Shawneetown to the village of Ridgway. The election was held under and in accordance with the provisions of the act of 1872, and it was contended that the Ballot law of 1891 repealed the provisions of that act relating to the manner of holding the election, and that said election should have been held in accordance with said Ballot law of 1891. The court, after setting out the provisions of the act of 1872 governing the manner of conducting the election, said (p. 525): "The Ballot law passed in 1891 does not contain any express repeal of the special act of 1872. There is no direct reference to it or anything which would constitute such express repeal. The act of 1891 contains the provision that 'all acts and parts of acts inconsistent with this act are hereby repealed,' but that adds nothing to the legal effect of its passage. Without that provision any previous act inconsistent with it would be repealed, and such a repeal constitutes an implied repeal or repeal by implication. A repeal of the act of 1872 can only result on account of such inconsistency between the two acts that they cannot both stand. Such a repeal is not favored in the law, and a later statute will never be held to repeal an earlier one unless they cannot be reconciled. It is the duty of the courts to construe them so as to avoid repeal if such a construction can be given, and a statute will never be held to be repealed by implication if it can be avoided by any reasonable hypothesis. (Citing cases.) It is also the rule that a subsequent law which is general does not abrogate or repeal a former one which is special and intended to operate upon a particular subject, and that if the later statute does not contain negative words it will not repeal the particular provisions of the

special law on the same subject unless it is impossible that both should be enforced. (Citing cases.) Now, the act of 1891 does contain negative words as to the use of other ballots than those therein provided for in the case of elections for public officers but has no negative words applying to any other class of elections. Section 1 of that act prohibits the use of any other ballots at any election for public officers, except for trustees of schools, school directors, members of boards of education and officers of road districts in counties not under township organization, but the act contains no negative word or word of prohibition as to the use of other ballots at an election where public officers are not voted for, like this election, where they are not and cannot be voted for." See, also, *People* v. *Cowden,* 160 Ill. 557, and *People* v. *Brown,* 189 id. 619.

In *County of Union* v. *Ussery,* 147 Ill. 204, relied on by defendant in error, the court had under consideration the validity of an election held in Union county November 3, 1891, upon the proposition of allowing domestic animals to run at large. It was there held that the question to be voted upon was within the meaning of section 16 of the Ballot law of 1891, and the election should have been conducted in conformity to the requirements of that act. The election under consideration in that case was held under the provisions of the act of 1874, and by the terms of that act the election upon the question of allowing domestic animals to run at large could only be held at the time of the general election in November in counties not under township organization, or in counties under township organization at the time of the regular election for town officers in April. It will thus be seen that such election could only be held at such times as public officers were required to be elected. The law we are now considering does not fix any time for the election but authorizes the time to be fixed by the judge of the county court.

In *Village of Ridgway* v. *Gallatin County, supra,* it was pointed out why *County of Union* v. *Ussery* was not in conflict with the decision in that case. The court said (p. 528) : "In *County of Union* v. *Ussery*, 147 Ill. 204, the court included the removal of county seats with other elections in illustrating what constituted a public measure, but there was no question in that case whether such an election should be conducted under the Ballot law, and questions now involved in this case were not decided by it. In that case the question of stock running at large was submitted at the general election in November, 1891, when public officers were voted for, and the election was one of those governed by the Ballot law."

The act providing for elections upon the subject of annexation is special in its nature, applicable only to a particular class of elections, and under the authority of the decisions above referred to was not repealed by the Ballot law of 1891. It would follow, therefore, that the elections should have been conducted and the ballots prepared in accordance with the provisions of said Annexation act and not in accordance with the provisions of the act of 1891, as was attempted to be done.

It is unnecessary to discuss the question whether the ballots used were in conformity with section 16 of the act of 1891, as we hold that act did not apply.

We are of opinion the bill stated a case that, if sustained by proof, would entitle plaintiff in error to the relief prayed, and that the circuit court erred in sustaining the demurrer. The decree will therefore be reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*