(No. 20863.—

THE PEOPLE ex rel. The Atwell Printing and Binding Company, Petitioner, vs. THE BOARD OF COMMISSIONERS OF COOK COUNTY et al. Respondents.

*Opinion filed June 18, 1931—Rehearing denied October 9, 1931.*

URBAN A. LAVERY, for petitioner.

JOHN A. SWANSON, State's Attorney, LOUIS H. GEIMAN, and JOHN E. PEDDERSON, (HAYDEN N. BELL, and WILLIAM F. STRUCKMANN, of counsel,) for respondents.

Mr. JUSTICE DUNN delivered the opinion of the court:

At the April term, 1931, upon leave granted, a petition was filed in the name of the People by the Atwell Printing and Binding Company, a corporation, relator, against the Board of Commissioners of the county of Cook, the president and members of the board and the county treasurer of Cook county, praying for a writ of *mandamus* commanding the defendants (other than the treasurer) to take such

action and such steps as are required by law to provide for the payment by the county of Cook of the warrants or vouchers drawn upon the county of Cook by the board of election commissioners to pay for the furnishing, printing and delivery of all the official and specimen candidate ballots for the general election in November, 1930, in the cities of Chicago, Chicago Heights and Berwyn, the town of Cicero and the villages of Summit and Evergreen Park, all within the county of Cook, and commanding Joseph B. McDonough, as county treasurer of Cook county, to pay the relator the amount due as shown by such vouchers or warrants, being the aggregate amount of $165,277.50, together with interest thereon at the rate of five per cent per annum from December 10, 1930, until the actual payment thereof, and further commanding each and all of the defendants to do and perform all acts and duties with respect to such payment and with respect to the prompt payment of such claim by the county of Cook as may be required by law. The respondents demurred to the petition and the cause was submitted on briefs.

The only question to be decided is the liability of the county, and this requires a construction of the City Election law of 1885 and the Ballot law of 1891.

The constitution of 1870 requires all votes to be by ballot. Neither the Election law of 1872, which was passed soon after adoption of the constitution, nor the City Election law in 1885, made any provision for furnishing ballots at an election but it was left for the voters, the candidates, the political parties or other organizations to furnish them. The City Election law was a general law, of which any city, village or incorporated town might avail itself by an election in the manner prescribed in the act. The cities, villages and incorporated town which have been mentioned have adopted this act and its provisions are applicable to them. By these provisions the commissioners of election of the city of Chicago are also *ex-officio* commissioners of

election for these other cities, villages and incorporated town in the county of Cook, and have control of the conduct of all elections in them as well as in the city of Chicago. In all these municipalities there are 3130 precincts. Section 5 of article 2 of the act (Smith's Stat. 1929, p. 1281,) provides that the board "shall provide all necessary ballot boxes and all registry books, poll-books, tally-sheets, blanks and stationery of every description with printed headings and certificates, necessary and proper for the registry of voters and the conduct of such elections, and for every incidental purpose connected therewith." Section 1 of article 7 provides that the salaries of the commissioners and the chief clerk and assistant chief clerk of the board shall be paid by the county and that all expenses incurred by the board shall be paid by the city, such salaries and expenses to be audited by the county judge and to be paid upon the warrant of the county judge by the county treasurer and the city treasurer out of any money not otherwise appropriated in the county treasury and city treasury, respectively, and that it shall be the duty of the governing authority of the county and city, respectively, to make provision for the prompt payment of such salaries and expenses, as the case might be. The duty of furnishing ballots not having been imposed upon the board, the expense of furnishing them was not included in the expenses which the board could incur as an obligation of the city. The law continued in this state until 1891, when the act "to provide for the printing and distribution of ballots at public expense, and for the nomination of candidates for public offices, to regulate the manner of holding elections, and to enforce the secrecy of the ballot," which is known as the Australian Ballot law, was enacted. That law provided (Smith's Stat. 1929, p. 1305) as follows:

"Sec. 1. That in all elections hereafter to be held in this State for public officers, except for trustees of schools, school directors, members of the boards of education, offi-

cers of road districts in counties not under township organization, the voting shall be by ballots printed and distributed at public expense as hereinafter provided, and no other ballots shall be used.

"Sec. 2. The printing and delivery of the ballots and cards of instruction to voters hereinafter described shall, in municipal elections in cities, villages and incorporated towns be paid for by the several cities, villages and incorporated towns respectively, and in town elections by the town, and in all other elections the printing of the ballots and cards of instruction for the voters in each county and the delivery of them to the several voting precincts and election districts shall be paid for by the several counties respectively. The term 'general election' as used in this act, shall apply to any election held for the choice of a National, State, judicial, district or county officer, whether for the full term or for the filling of a vacancy. The term 'city election' shall apply to any municipal election held in a city, village or incorporated town."

This was a new departure in the conduct of elections in Illinois. It imposed for the first time on the public the duty of printing and distributing at public expense all the ballots to be used in all elections in the State for public officers, except school elections and road district elections, and prohibited the use of any other ballots. The expense of the performance of this duty in municipal elections in cities, villages and incorporated towns was required to be paid by the several cities, villages and incorporated towns, respectively, and in town elections by the town, and in all other elections by the several counties, respectively. The term "city election" was declared to apply to any municipal election held in a city, village or incorporated town, and the term "general election" to any election held for the choice of a National, State, judicial, district or county officer, whether for the full term or for the filling of a vacancy. Section 15 provided: "For all elections to which this act

applies, the county clerks, in their respective counties, shall have charge of the printing of the ballots for all general elections, and shall furnish them to the judges of election; the city, town or village clerk shall have charge thereof and furnish them in all city elections, and the town clerk in counties under township organization shall have charge thereof and furnish the same in all town elections to which this act applies: *Provided,* that in cities, towns, or villages having a board of election commissioners, such board shall have charge of the printing of the ballots and furnish them to the judges of election within the territory under their jurisdiction." Section 35 provided: "All acts and parts of acts inconsistent with the provisions of this act are hereby repealed: *Provided,* that this act shall not be construed to repeal an act entitled 'An act regulating the holding of elections and declaring the results thereof in cities, villages and incorporated towns,' approved June the 19th, 1885, or any of the amendments thereto; but all elections in cities, villages and incorporated towns which may have heretofore adopted or may hereafter adopt the said act shall be held in accordance with the provisions of the aforesaid act, except as to the manner of making nominations for office, the manner of providing, printing and distributing ballots, the form of ballots, the arrangement and the furnishing of polling places and voting booths, and the manner of voting and the numbering and preserving of ballots, all of which shall be in conformity with the provisions of this act. No penalty provided for a violation of any of the provisions of this act shall be construed as a substitute for, or repeal of, any penalty provided in the aforesaid acts of June·19, 1885, for a violation of any of the provisions of said act."

The Ballot law was an original, independent act of legislation complete in itself, for the purpose of enforcing the secrecy of the ballot by regulating the manner of holding elections and the nomination of candidates and by providing for the exclusive use of ballots furnished by public

authorities at the public expense. The purpose of the entirely new system of requiring voters at all elections and in every precinct to use only ballots furnished by public officers at the public expense was the prevention of election frauds, and the legislature in passing the Ballot law was occupied with an entirely new subject—tbe furnishing of ballots at public expense. The Ballot law was a complete law on this subject, and distinctly placed the cost in certain cases upon the county and in other cases upon the incorporated town, city or village or town. The City Election law did not then impose upon either a city, the county, incorporated town or village acting under it, or a town, the expense of furnishing ballots, because no ballots under that law were furnished at public expense. Therefore the requirement that all expenses incurred by the board of election commissioners to be paid by the city did not include expenses for the furnishing of ballots. The subject of who should furnish ballots and who should pay for them was not considered in the City Election law, because there were no expenses for that purpose. When the new law imposing upon the board of election commissioners the duty of printing and delivering the ballots was passed, the question then first arose who should pay the expenses necessarily incurred in furnishing and delivering the ballots, and the Ballot law carefully and completely covered that subject. It had never been considered in any previous legislation. Until the passage of the Ballot law no liability could possibly be incurred by any public officer, board or municipality for such service.

The respondents' contention that the county is not liable for the expense of printing and delivering the ballots is based upon the proposition that the Election Commissioners act is a particular law which is applicable in particular elections, only, while the Ballot law is a general act applicable to all elections, and in such cases the particular law governs, and that the rule of construction which requires that when

two acts are enacted at different sessions of the legislature on the same subject matter and there are conflicts between the two statutes the statute last enacted shall govern, does not apply when one act is a particular act and the other is a general act.

There is no doubt about the existence of the rule that where there are two acts, one a particular act which certainly includes the matter in question, and the other a general act which, standing alone, would include the same matter, so that the provisions of the two acts conflict, the particular act must be given the effect of establishing an exception to the general act, and a later statute general in its terms and not expressly repealing the prior special statute will ordinarily not affect the special provisions of the earlier statute. (*Village of East Springfield* v. *City of Springfield,* 238 Ill. 534; *Crane* v. *Reeder, 22* Mich. 322; *Rodgers* v. *United States,* 185 U. S. 83.) It is equally clear that the provisions of a special act may be amended or repealed by a general act, either expressly or by implication from the inconsistency between the two acts, when the legislative intent to repeal or modify the provisions of the special act plainly appears. *People* v. *Chicago and Eastern Illinois Railroad Co.* 300 Ill. 218; *Dutton* v. *City of Aurora,* 114 id. 138; *McCormick* v. *People,* 139 id. 499.

A general statute does not repeal a special statute unless the purpose to do so is clearly manifested. This rule is not applicable in this case. Here there is no particular statute to repeal. The City Election law provided that all expenses incurred by the board of election commissioners should be paid by the city, but no expenses for the printing and delivery of ballots could be incurred by the board of election commissioners to be paid by the city or any other person or authority. No such expenses were within the contemplation of the act. There was no law for imposing a liability for such expenses or relieving from liability. When the Ballot law was under consideration the

entirely new question arose who should pay for the printing and distribution of the ballots. It was not necessary to repeal or amend any law, because there was no law on this subject, and the legislature disposed of the question by providing that in some elections these expenses should be paid by the cities, villages, incorporated towns and towns, respectively, and in other cases they should be paid by the county. This did not repeal or amend any law. It provided for an entirely new situation by determining who should pay in each case the new expenses which the election board was authorized to incur. Moreover, the rule as to repeals implied from the repugnancy of provisions between a general act and a particular act does not apply in this case because there is no rule which prohibits the repeal of a special act by a general one, the question being always one of intention. It is a well settled principle that where two statutes are clearly repugnant to each other the one last enacted acts as a repeal of the former; and this principle is applicable even though the prior statute is a local or special act which is repugnant to a subsequent general act. (*McCormick* v. *People supra; People* v. *Town of Thornton,* 186 Ill. 162; *People* v. *McCann,* 247 id. 130.) In the case first cited it is stated that the rule there under consideration is "based upon the presumption that the legislature in passing a general law has only general cases in view, and not particular cases which have already been provided for by special act. Having already given its attention to the particular subject and provided for it, the legislature is reasonably presumed not to intend to alter that special provision by a subsequent general enactment unless that intention is manifested in express language, or there is something which shows that the attention of the legislature was turned to the special act, and that the general one was intended to embrace the special cases within it, or that there is something in the nature of the general act which makes it unlikely that an exception was intended as regards the special act." It was fur-

ther said: "But the rule here referred to is only a rule of interpretation, and must therefore yield where the conclusion properly arises from the language of the general act that it was the legislative intention to repeal or modify the provisions of a special act. Thus, in *New Brunswick* v. *Williamson*, 44 N. J. L. 165, the court, after recognizing said rule, says: 'But there is no rule of law which prohibits the repeal of a special act by a general one; nor is there any principle forbidding such repeal without the use of express words declarative of the legislative intent to repeal the earlier statute. The question is always one of intention, and the purpose to abrogate the particular enactment is sufficiently manifested when the provisions of both can not stand together, and it is a cardinal doctrine in the construction of statutes that, if possible, full effect shall be given to all their parts.' "

From a consideration of the language of sections 15 and 35 of the Ballot law, as well as from the whole act, it is clear that the legislature had in mind the provisions of the City Election law in regard to the payment of the expenses incurred by the election commissioners, and that it was its intention to cover the whole subject of payment for the printing of the ballots and the cards of instruction and their delivery, by section 2 of the Ballot law.

Counsel for the respondents say in their brief that for the purposes of this litigation it is to be assumed that there is no question as to the amount which is due to the printer for the printing of these ballots, nor is there involved any question of interest. This concession precludes any consideration of these questions.

The writ of *mandamus* is awarded in accordance with the prayer of the petition.                *Writ awarded.*