(No. 20884.—

Edward J. Jacob, Appellant, *vs.* The City of Peoria, Appellee.

*Opinion filed October 23, 1931.*

Jones, J., took no part.

Ira J. Covey, and Edwin L. Covey, for appellant.

Charles C. Dickman, Corporation Counsel, and Carl Behrman, City Attorney, (R. H. Radley, of counsel,) for appellee.

Mr. Justice DeYoung delivered the opinion of the court:

Edward J. Jacob brought an action of assumpsit in the circuit court of Peoria county against the city of Peoria. The declaration consisted of the common counts and a special count. The city interposed a demurrer to the declaration. Thereafter the plaintiff withdrew the common counts, and the demurrer limited to the special count was overruled. The city elected to abide by its demurrer and judgment was rendered against it for $4087 and costs. On appeal by the city to the Appellate Court for the Second District, the judgment was reversed and the cause was remanded to the circuit court with directions to sustain the

demurrer. The Appellate Court granted a certificate of importance, and the plaintiff prosecutes this further appeal.

It is alleged in the special count that, at a regular election, held on November 3, 1914, the city of Peoria adopted an act entitled, "An act regulating the holding of elections and declaring the result thereof in cities, villages and incorporated towns in this State," as amended, commonly known as the City Election act, (Cahill's Stat. 1929, p. 1192; Smith's Stat. 1929, p. 1277); that from time to time election commissioners for the city were appointed in accordance with the act; that the commissioners, in the performance of their duties, engaged the appellant to print the ballots, specimen ballots and cards of instruction to voters to be used in the city of Peoria at the ensuing primary of April 8, 1930, for the nomination of candidates for the offices of United States senator, representative in Congress, representative in the General Assembly, State Treasurer, and other State and county officers and for the election of State, senatorial and precinct committeemen; that the appellant printed the ballots, specimen ballots and cards of instruction so ordered and delivered them to the commissioners; that he rendered the commissioners and the city of Peoria a bill therefor amounting to $4087; that the commissioners approved the bill and filed it with the city comptroller, and that the comptroller thereafter presented the bill to the city council, but that the council refused to allow the claim to be paid out of the city treasury assigning as the reason for its action that the printing was done for a primary at which candidates for Federal, State and county offices were to be nominated and consequently was not a proper charge against the city of Peoria. The count concludes with the allegation of the city's indebtedness to the appellant and its refusal to pay the sum claimed.

The question whether certain municipalities which had adopted the City Election act were liable for the cost and expense of printing candidate ballots used at a general elec-

tion for State and county officers was recently considered in the case of *People* v. *Board of Comrs.* 345 Ill. 172. It appeared that the election commissioners of the city of Chicago were also *ex-officio* commissioners of election of the cities of Chicago Heights and Berwyn, the villages of Summit and Evergreen Park and the incorporated town of Cicero, all in Cook county; that the relator, at the request of the board of election commissioners, had printed the official and specimen candidate ballots used in these municipalities at the general election held on November 4, 1930; that, for the ballots so furnished, warrants aggregating $165,277.50 drawn upon the county of Cook by the board of election commissioners were issued to the relator, and that, upon the county's refusal to pay the warrants, a writ of *mandamus* to enforce their payment was sought. The relator contended that the county was legally obliged to pay for the printing and delivery of these ballots, while the board of commissioners of Cook county insisted that this expense should be borne *pro rata* by the several municipalities in which the ballots had been used. It was held that the furnishing of ballots for use at an election was not within the contemplation of the City Election act; that the act imposed no such duty upon the board of election commissioners, and hence that the cost of furnishing such ballots was not included in the expenses which the act authorized the board to incur; that the subsequent act entitled, "An act to provide for the printing and distribution of ballots at public expense, and for the nomination of candidates for public offices, to regulate the manner of holding elections, and to enforce the secrecy of the ballot," commonly called the Ballot law, (Cahill's Stat. 1929, p. 1181; Smith's Stat. 1929, p. 1305), which became effective July 1, 1891, first imposed upon the public the duty of printing and distributing at public expense the ballots to be used at all elections in the State for public officers, except school and road district elections, and that liability for

the cost and expense of such ballots is fixed by section 2 of the Ballot law which reads: "The printing and delivery of the ballots and cards of instruction to voters hereinafter described shall, in municipal elections in cities, villages and incorporated towns be paid for by the several cities, villages and incorporated towns respectively, and in town elections by the town, and in all other elections the printing of the ballots and cards of instruction for the voters in each county and the delivery of them to the several voting precincts and election districts shall be paid for by the several counties respectively. The term 'general election,' as used in this act, shall apply to any election held for the choice of a national, State, judicial, district or county officer, whether for the full term or for the filling of a vacancy. The term 'city election' shall apply to any municipal election held in a city, village or incorporated town." Accordingly, the county was held liable, and the writ of *mandamus* was awarded.

In the foregoing case, the claim was for printing ballots used at the general election held on November 4, 1930. The claim in the present case is for ballots and cards of instruction used at the preceding primary of April 8, 1930. That primary was conducted under the act entitled, "An act to provide for the making of nominations by, and the organization of, political parties," (Cahill's Stat. 1929, p. 1220; Smith's Stat. 1929, p. 1326). Section 25 of that act provides that, "The expense of conducting such primary; including the per diem of judges and clerks, furnishing, warming, lighting and maintaining the polling place, and all other expenses necessarily incurred in the preparation for or conducting such primary shall be paid in the same manner, and by the same authorities or officers respectively as in the case of elections."

The legislature has power to apportion the expense of conducting elections among governmental subdivisions and incorporated municipalities. In the exercise of that power

it determined by section 2 of the Ballot law that the expense of printing and distributing the ballots and cards of instruction to voters in all elections, other than town and municipal, should be borne by the county. Liability for the cost of printing ballots and cards of instruction used at a primary to nominate Federal, State and county candidates is by section 25 of the Primary act charged upon the same governmental subdivision.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE JONES took no part in the decision of this case.