# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People ex rel. Madigan v. Burge, 2012 IL App (1st) 112842**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General State of Illinois, Plaintiff-Appellant, v. JON BURGE, in His Individual Capacity, THE RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, and MICHAEL A. CONWAY, KENNETH A. HAUSER, MICHAEL J. LAZZARO, STEVEN J. LUX, JAMES P. MALONEY, STEPHANIE D. NEELY, GENE R. SAFFOLD, MICHAEL K. SHIELDS, in Their Official Capacities as Trustees of the Policemen's Annuity and Benefit Fund of Chicago, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-2842 |
| Filed<br>Rehearing denied | November 30, 2012<br>January 8, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the dismissal of the Attorney General's complaint seeking to enjoin defendant retirement board from continuing to pay pension benefits to a retired police officer who was convicted of obstruction of justice and perjury in connection with the alleged torture and abuse of suspects who were in custody while the officer was working, the dismissal was reversed and the cause was remanded, since the board erred in determining that the board's tie vote on the issue of whether the officer's convictions were related to his employment allowed the officer to continue to receive pension benefits, and the Attorney General had standing to sue to recover funds paid in violation of the Pension Code. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-04366; the Hon. Rita M. Novak, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded with instructions. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Paul Berks, Assistant Attorney General, of counsel), for appellant. |
| | Michael H. Moirano and Claire Gorman Kenny, both of Nisen & Elliot, LLC, of Chicago, for appellee Jon Burge. |
| | David R. Kugler, of Retirement Board of Policemen's Annuity and Benefit Fund, of Chicago, for appellee Retirement Board of Policemen's Annuity and Benefit Fund. |
| Panel | JUSTICE HALL delivered the judgment of the court, with opinion. Justice Gordon concurred in the judgment and opinion. Justice Garcia specially concurred, with opinion. |

**OPINION**

¶ 1    The Illinois Attorney General appeals from an order of the circuit court dismissing her complaint against defendants-appellees the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago, its board of trustees (Pension Board), and Jon Burge, a retired Chicago police officer. In the complaint, the Attorney General, acting on behalf of the People of the State of Illinois, sought declaratory and injunctive relief seeking to enjoin the Pension Board from making ongoing pension payments to Burge in light of his felony convictions. For the reasons that follow, we reverse and remand the matter to the circuit court for further proceedings.

¶ 2    Burge was a Chicago police officer from 1970 to 1993. During his tenure with the Chicago police department, Burge held the ranks of detective, sergeant, and eventually lieutenant, supervising detectives in the violent crime units in Area Two and Area Three. Burge is widely believed to have sanctioned and participated in the physical abuse and torture of arrestees in order to obtain confessions.

¶ 3    On June 28, 2010, following a jury trial, Burge was convicted of two counts of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2), and one count of perjury in violation of 18 U.S.C. § 1621(1). The felony convictions were based upon charges brought by the federal government against Burge alleging that he gave false representations and

answers to written interrogatories in civil litigation regarding his knowledge of or participation in the torture and abuse of suspects in his custody when he was employed by the Chicago police department. See *United States v. Burge*, No. 08 CR 846, 2011 WL 167230 (N.D. Ill. Jan. 19, 2011); *United States v. Burge*, No. 08 CR 846, 2011 WL 13471 (N.D. Ill. Jan. 3, 2011).

¶ 4     On January 21, 2011, Burge was sentenced to 54 months in prison. See *Tillman v. Burge*, 813 F. Supp. 2d 946, 955 (N.D. Ill. 2011). Burge began receiving pension benefits in 1997 and continues to receive pension benefits of approximately $3,000 per month.

¶ 5     The Pension Board subsequently held an evidentiary hearing to determine if section 5-227 of the Illinois Pension Code (Pension Code) (40 ILCS 5/5-227 (West 2010)) applied to cause Burge to forfeit his ongoing pension payments in light of his felony convictions. Section 5-227 of the Pension Code states in relevant part that "[n]one of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as a policeman." 40 ILCS 5/5-227 (West 2010).

¶ 6     At the hearing, counsel for Burge argued that Burge's pension benefits were not forfeited under section 5-227 of the Pension Code because his felony convictions were not related to his conduct as a police officer but, rather, were related to giving false testimony in response to written interrogatories in a civil suit filed years after he retired from the Chicago police department. At the conclusion of the hearing, a Pension Board trustee made a motion to terminate Burge's monthly pension benefits on the ground that his felony convictions were connected to his service as a police officer as provided for in section 5-227 of the Pension Code. The motion was properly seconded and a vote was taken.

¶ 7     The Pension Board was comprised of eight trustees: four appointed by the City of Chicago and four elected by police officer participants in the pension fund. See 40 ILCS 5/5-178, 5-179 (West 2010). The Pension Board split 4 to 4 on the question as to whether Burge's felony convictions related to, arose out of, or were connected with his employment as a Chicago police officer. The four city-appointed trustees all voted to terminate the benefits, while the four officer-elected trustees all voted to continue the payments. The Pension Board concluded that the tie vote meant that "Burge was allowed to continue to receive his monthly pension benefits." The Pension Board issued its written administrative decision on January 31, 2011.

¶ 8     On February 7, 2011, the Attorney General filed the complaint at issue, alleging that the Pension Board's decision to allow Burge to continue to receive his monthly pension payments violated section 5-227 of the Pension Code. The Attorney General sought a preliminary and permanent injunction ordering the Pension Board to cease all pension payments to Burge and an order requiring him to repay any benefits paid to him since his felony convictions. The Attorney General brought the complaint pursuant to section 1-115(b) of the Pension Code, which authorizes the Attorney General or a participant, beneficiary or fiduciary, to bring a civil action to enjoin any act or practice which violates any provision of the Pension Code. 40 ILCS 5/1-115(b) (West 2010).

¶ 9     In response, the Pension Board filed a motion to dismiss the complaint pursuant to

sections 2-619(a)(1) and (a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(1), (a)(9) (West 2010)), alleging that the circuit court lacked subject matter jurisdiction over the complaint because the Pension Board's final administrative decision was reviewable only under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)), and that the Attorney General never filed an action to review the decision under that law.

¶ 10    Burge filed a motion to dismiss the complaint pursuant to section 2-619(a)(5) of the Code, along with supporting memorandum. He argued that the circuit court lacked subject matter jurisdiction over the complaint because the Pension Board's final administrative decision was reviewable only under the Administrative Review Law and that the Attorney General failed to file an action to review the decision within the 35-day limit of section 3-103 of the Administrative Review Law. This section of the Administrative Review Law provides in relevant part that "[e]very action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2008).

¶ 11    On September 2, 2011, the circuit court issued a memorandum decision and order dismissing the Attorney General's complaint pursuant to section 2-619(a)(1) of the Code. The circuit court determined that section 1-115 of the Pension Code did not vest it with subject matter jurisdiction to rule on the merits of the Attorney General's complaint where section 5-189 of the Pension Code (40 ILCS 5/5-189 (West 2010))[1] vested the Board with exclusive original jurisdiction in all matters relating to or affecting the pension fund and section 5-228 of the Pension Code (40 ILCS 5/5-228 (West 2010))[2] provided that judicial review of a pension board's final administrative decision was governed by the Administrative Review Law.

¶ 12    The circuit court also determined that the complaint could not be construed as a complaint seeking administrative review of the Pension Board's decision since the Attorney General admitted that she was not seeking to challenge the Pension Board's decision but, instead, the Pension Board's continued pension payments to Burge. The circuit court further determined that the complaint could not be construed as a complaint under the Administrative Review Law because it contained no features of an action for administrative review where it failed to allege that the Attorney General was a party of record in the administrative proceedings and there was no indication that the Attorney General sought to

---

[1]Section 5-189 of the Pension Code provides in part that "[t]he Board shall have exclusive original jurisdiction in all matters relating to or affecting the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds." 40 ILCS 5/5-189 (West 2010).

[2]Section 5-228 of the Pension Code provides in part that "[t]he provisions of the Administrative Review Law, and all amendments and modifications thereof and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the retirement board provided for under this Article." 40 ILCS 5/5-228 (West 2010).

intervene in the proceedings. This appeal followed.

¶ 13                                        ANALYSIS

¶ 14        The circuit court dismissed the Attorney General's complaint pursuant to section 2-619(a)(1) of the Code, based upon its finding that it lacked subject matter jurisdiction over the complaint. Our review of a dismissal under this section of the Code is *de novo*. *Consolidated Freightways Corp. of Delaware v. Human Rights Comm'n*, 305 Ill. App. 3d 934, 938 (1999).

¶ 15        In reviewing the grant of a section 2-619 motion, we interpret the pleadings and supporting materials in a light most favorable to the plaintiff. *Shirley v. Harmon*, 405 Ill. App. 3d 86, 90 (2010). A section 2-619 motion admits all well-pleaded facts in the complaint and all reasonable inferences that may be drawn therefrom, but it does not admit conclusions of law or fact unsupported by specific allegations. *Jackson v. Moreno*, 278 Ill. App. 3d 503, 505 (1996); *Rajcan v. Donald Garvey & Associates, Ltd.*, 347 Ill. App. 3d 403, 407 (2004).

¶ 16        Reviewing a section 2-619 dismissal is similar to reviewing a grant of a motion for summary judgment in that we must determine whether a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal was proper as a matter of law. *Shirley*, 405 Ill. App. 3d at 90. In this case, there are no disputed issues of material fact so our review is confined to whether dismissal was proper as a matter of law. *Consolidated*, 305 Ill. App. 3d at 938; *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 294 (2010) ("An argument challenging the subject matter jurisdiction of the circuit court presents a question of law ***.").

¶ 17        "Subject matter jurisdiction refers to a court's power to adjudicate the general question involved and to grant the relief requested." *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1064 (2009). A circuit court's subject matter jurisdiction is conferred by our state constitution. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002).

¶ 18        Article VI, section 9, of the Illinois Constitution of 1970 provides that "Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office. Circuit Courts shall have such power to review administrative action as provided by law." Ill. Const. 1970, art. VI, § 9. As the language of article VI, section 9, indicates, circuit courts have original jurisdiction over all justiciable matters except those explicitly assigned to the supreme court and those arising out of administrative proceedings.

¶ 19        In the area of administrative review, a circuit court's power to adjudicate is controlled by the legislature. *Belleville Toyota, Inc.*, 199 Ill. 2d at 336. The legislature generally has no authority to limit or preclude a circuit court's jurisdiction to hear a matter, except for administrative review of agency decisions where such review is mandated by the agency's enabling statute. Our courts have determined that "[w]here the legislature enacts a comprehensive statutory scheme, creating rights and duties which have no counterpart in common law or equity, the legislature may define the 'justiciable matter' in such a way as

-5-

to preclude or limit the jurisdiction of the circuit courts." *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504*, 128 Ill. 2d 155, 165-66 (1989).

¶ 20　　In other words, because the legislature establishes administrative agencies and statutorily empowers them, it may vest exclusive original jurisdiction in an administrative agency. *Village of Itasca v. Village of Lisle*, 352 Ill. App. 3d 847, 852 (2004). However, in order for a legislative enactment to divest circuit courts of their original jurisdiction through a comprehensive statutory scheme, it must do so explicitly. *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284, 287 (1994).

¶ 21　　Statutory interpretation is necessary to determine if the legislature intended to divest the circuit court of subject matter jurisdiction. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 27. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Croissant v. Joliet Park District*, 141 Ill. 2d 449, 455 (1990). The best evidence of this intent is the language of the statute itself, which must be given its plain and ordinary meaning. *Krautsack v. Anderson*, 223 Ill. 2d 541, 553 (2006).

¶ 22　　In this case, the circuit court determined that section 5-189 of the Pension Code divested it of subject matter jurisdiction to consider the merits of the Attorney General's complaint. Section 5-189 of the Pension Code is entitled "To authorize payments" and provides as follows:

> "To authorize payments. To authorize the payment of any annuity, pension, or benefit under this Article or under any other Act relating to police pensions, heretofore in effect in the city which has been superseded by this Article; to increase, reduce, or suspend any such annuity, pension, or benefit whenever any part thereof was secured or granted or the amount thereof fixed, as the result of misrepresentation, fraud, or error; provided, the annuitant, pensioner or beneficiary concerned shall be notified and given an opportunity to be heard concerning such proposed action.
>
> 　　The Board shall have exclusive original jurisdiction in all matters relating to or affecting the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds." 40 ILCS 5/5-189 (West 2010).

¶ 23　　The circuit court interpreted the last sentence of section 5-189 as divesting it of subject matter jurisdiction to consider the merits of the Attorney General's complaint on the ground that this section of the Pension Code vested the Board with exclusive original jurisdiction in all matters relating to or affecting the pension fund. However, it is well settled that in construing a statute, a court must not be guided by a single sentence or by an isolated provision but must view the statute as a whole. *In re Consensual Overhear*, 323 Ill. App. 3d 236, 240 (2001).

¶ 24　　Section 5-189 of the Pension Code grants the Board the power to authorize, increase, reduce, or suspend any annuity, pension, or benefit that was secured or granted as the result of misrepresentation, fraud, or error–provided that the annuitant, pensioner or beneficiary was given due process protection concerning such proposed action. 40 ILCS 5/5-189 (West 2010). But the Board's authority under section 5-189 of the Pension Code does not include

the authority to bring civil actions to enjoin acts or practices allegedly violating provisions of the Pension Code. Rather, such authority is granted to the Attorney General pursuant to section 1-115(b) of the Pension Code. This section of the Pension Code, entitled "Civil Enforcement," provides in relevant part that a "civil action may be brought by the Attorney General or by a participant, beneficiary or fiduciary in order to: *** (b) Enjoin any act or practice which violates any provision of this Code." 40 ILCS 5/1-115(b) (West 2010).

¶ 25    Viewing the statute as a whole, we find no explicit language in the statute expressing a legislative intent to divest circuit courts of the subject matter jurisdiction to hear civil actions brought by the Attorney General under section 1-115(b) of the Pension Code. As a result, we find that the circuit court erred in interpreting section 5-189 of the Pension Code as divesting it of the subject matter jurisdiction to address the Attorney General's claims. We find that section 1-115(b) gives the circuit court concurrent subject matter jurisdiction with the Pension Board to hear the disputed pension issues presented in the Attorney General's complaint. "Where a circuit court and an administrative agency both have jurisdiction over a matter, they are said to have concurrent jurisdiction." *Village of Itasca v. Village of Lisle*, 352 Ill. App. 3d 847, 853 (2004).

¶ 26    When a matter falls both within the circuit court's jurisdiction and the Pension Board's jurisdiction, the prudent course generally is to allow the Pension Board the opportunity to address the matter first. See, *e.g.*, *Village of Itasca*, 352 Ill. App. 3d at 853 (the doctrine of primary jurisdiction provides that in some instances when a circuit court and an administrative agency have concurrent jurisdiction over the subject matter of a dispute, the court should stay judicial proceedings pending referral of the controversy, or a portion of it, to the agency having expertise in the area). This approach allows the Pension Board to bring its experience and expertise to bear in resolving issues arising under the Pension Code, while at the same time preserving the Attorney General's ability to fulfill her statutory responsibility under section 1-115(b) to enjoin violations of the Code.

¶ 27    In this case, the Pension Board split 4 to 4 on the question as to whether Burge's felony convictions related to, or arose out of, or were connected with his employment as a Chicago police officer. The Pension Board then determined that this tie vote effectively allowed Burge to continue to receive his monthly pension benefits. Consequently, the Pension Board's decision allowing Burge to continue to receive his pension payments was not approved by a majority of the members of the Pension Board as required by section 5-182 of the Pension Code. A "majority" is generally defined as " '[t]he number greater than half of any total.' " *County of Kankakee v. Anthony*, 304 Ill. App. 3d 1040, 1047 (1999) (quoting Black's Law Dictionary 955 (6th ed. 1990)).

¶ 28    Section 5-182 of the Pension Code provides in relevant part that "no pension, annuity, or benefit shall be allowed or granted and no money shall be paid out of the fund unless ordered by a vote of the majority of the members of the board." 40 ILCS 5/5-182 (West 2010). This section of the Pension Code requires approval by a majority of the "members of the board." See *Village of Oak Park v. Village of Oak Park Firefighters Pension Board*, 362 Ill. App. 3d 357, 369 (2005).

¶ 29    As a creature of statute, the Pension Board may exercise only those powers conferred

upon it by statute. See, *e.g.*, *Nader v. Illinois State Board of Elections*, 354 Ill. App. 3d 335, 340 (2004). Here, the Pension Board had the statutory authority to conduct a vote on the question as to whether Burge's felony convictions related to, or arose out of, or were connected with his service as a Chicago police officer. See 40 ILCS 5/5-227 (West 2010). Based upon the outcome of that vote, the Pension Board possessed the statutory authority to determine whether Burge should continue to receive his monthly pension benefits. See 40 ILCS 5/5-189 (West 2010).

¶ 30     However, the Pension Board erred in violation of section 5-182 of the Pension Code when it concluded that a tie vote meant that "Burge was allowed to continue to receive his monthly pension benefits." When an administrative agency has jurisdiction over the parties and the subject matter in question, but makes an erroneous decision, the decision is voidable. See *Wabash County v. Illinois Municipal Retirement Fund*, 408 Ill. App. 3d 924, 930 (2011); *Board of Education of the City of Chicago v. Board of Trustees of the Public Schools Teachers' Pension & Retirement Fund*, 395 Ill. App. 3d 735, 739-41 (2009). In the instant case, the Pension Board's decision that a tie vote meant that "Burge was allowed to continue to receive his monthly pension benefits" was erroneous in violation of section 5-182 of the Pension Code, rendering the decision voidable and subject to review by the circuit court.

¶ 31     Finally, we reject the suggestion that the Attorney General lacked standing to assert the claims set forth in her complaint. "The doctrine of standing requires that a party, either in an individual or representative capacity, have a real interest in the action brought and in its outcome." *In re Estate of Wellman*, 174 Ill. 2d 335, 344 (1996). The purpose of standing is to ensure that courts are deciding actual, specific controversies and not abstract questions or moot issues. *Id*. Standing requires some injury in fact to a legally recognizable interest. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988).

¶ 32     Article V, section 15, of the Illinois Constitution of 1970 provides that "The Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law." Ill. Const. 1970, art. V, § 15. "Our supreme court has interpreted this provision to mean that the Illinois Attorney General is vested with those powers and duties associated with the office of Attorney General at common law as well as with whatever additional powers and duties for which the legislature provides." *People ex rel. Devine v. Time Consumer Marketing, Inc.*, 336 Ill. App. 3d 74, 79-80 (2002).

¶ 33     Pursuant thereto, the Attorney General's statutorily prescribed duties include, among others, the duty to represent the people of the state in any litigation in which the people of the state are interested; and to investigate alleged violations of the statutes which the Attorney General has a duty to enforce. 15 ILCS 205/4 (West 2000). Here, the Attorney General, as the representative of all the taxpayers of the state, has the standing under her statutory powers to sue to recover funds[3] disbursed in violation of section 5-227 of the Pension Code.

---

[3]Pursuant to statute, the City of Chicago maintains four pension funds, one of which is the Policemen's Annuity and Benefit Fund. See *Ryan v. City of Chicago*, 148 Ill. App. 3d 638, 639-40 (1986). This fund is financed part by the City of Chicago through special property taxes. *Id*.

¶ 34    For the foregoing reasons, we reverse the judgment of the circuit court dismissing the Attorney General's complaint. We remand this cause for further proceedings consistent with this opinion.

¶ 35    Reversed and remanded with instructions.

¶ 36    JUSTICE GARCIA, specially concurring.

¶ 37    I agree with Justice Hall that section 1-115(b) of the Pension Code, by its clear and unambiguous language, can mean nothing other than the circuit court has jurisdiction to entertain a civil action filed by the Illinois Attorney General to challenge pension benefits paid to Burge since his federal conviction on June 28, 2010, as contrary to Illinois pension law. *Supra* ¶ 25. "A civil action may be brought by the Attorney General *** to *** [e]njoin any act or practice which violates any provision of this Code ***." 40 ILCS 5/1-115(b) (West 2010). However, the majority opinion goes too far (and unnecessarily) in decreeing that the 4 to 4 vote by the Board constitutes a violation of section 5-182 of the Pension Code because the "tie vote meant that 'Burge was allowed to continue to receive his monthly pension benefits.' " *Supra* ¶ 30. The tie vote meant nothing more than the *status quo* of Burge receiving pension benefits would be maintained. With a Board membership of eight, a tie vote seems hardly unexpected or unanticipated by the enabling legislation. More fundamentally, I disagree with the suggestion that the four members of the Board that voted in favor of continuing Burge's pension benefits somehow violated a duty owed to the pension fund based on the resulting tie vote. *Supra* ¶ 7.

¶ 38    The Attorney General contends section 5-182 serves as a mechanism to stop pension benefits in the event of a tie vote: "Where, as here, a majority of the members did not support payment, the pension should have been terminated." I find the Attorney General's assertion that pension benefits may be terminated based on an event subsequent to the Board's initial grant of pension benefits, where the Board votes 4 to 4 on the question of termination of pension benefits, to be unprecedented. Pension benefits may only be terminated in compliance with due process. *Kosakowski v. Board of Trustees of the City of Calumet City Police Pension Fund*, 389 Ill. App. 3d 381, 387 (2009) ("The receipt of a disability pension is a property right which cannot be diminished without procedural due process."). The Attorney General offers no authority for her outlandish claim that a 4 to 4 vote means the pension benefits a pensioner has been receiving for over a decade may cease simply because a majority did not vote in favor of a continuation of the pension payments.

¶ 39    Section 5-182 is violated only when a "pension, annuity, or benefit" is approved by less than the majority of the Board. 40 ILCS 5/5-182 (West 2010). The Board's tie vote did not approve a pension benefit for Burge. The pension benefits Burge had been receiving were approved in 1997, long before the Board's vote was taken in January 2011. *Supra* ¶ 4. That no violation of section 5-182 occurred based on the tie vote is reinforced by the uncontestable fact that had the Board not taken a vote to terminate Burge's pension, the pension payments would have continued. Under the Attorney General's contention, it appears that a nonvote would not have violated section 5-182, yet a tie vote does, though the end

result under either scenario would be the same; that is, Burge would continue to receive his pension benefits. The Board's evenly split vote in January 2011 changed nothing. Nor can the Attorney General deny that, had the Board voted 5 to 3 to allow the pension benefits to continue (foreclosing a claim that section 5-182 was violated), the Attorney General still would have pursued a civil action under section 1-115(b) in an effort to prove that Burge's federal felony convictions triggered a forfeiture of pension benefits under section 5-227. 40 ILCS 5/5-227 (West 2010). It is far-fetched to label a tie vote a violation of the Code simply because the Board was precluded from altering the *status quo*.

¶ 40    If a violation of the Code occurred, it occurred because Burge's federal felony convictions were related to his employment as a Chicago police officer, which section 5-227 declares results in the forfeiture of benefits.[4] See *Devoney v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 199 Ill. 2d 414, 423-24 (2002) (claimant's felony conviction in federal court rendered him ineligible for his police pension benefits under section 5-227 of the Pension Code). Such a violation has nothing to do with the Board's January 2011 decision and everything to do with the nature of Burge's federal convictions. See *Romano v. Municipal Employees Annuity & Benefit Fund*, 402 Ill. App. 3d 857, 861 (2010) (pension board's decision declaring the plaintiff ineligible for pension benefits was against the manifest weight of the evidence where there was no "clear and specific connection between the felony of which the plaintiff was convicted and his municipal employment").

¶ 41    The procedure to address continued pension payments under the circumstances of this case is precisely the action the Attorney General took–filing a civil action under section 1-115. There is no basis to conclude that a violation of the Code occurred under section 5-182 simply because a decision to terminate the pension benefits Burge had been receiving since 1997 was not approved by a majority of the Board.

¶ 42    All this said, a remand to the circuit court is necessary to permit the Attorney General's section 1-115(b) civil action to go forward to a resolution On remand, if it is proved that Burge's felony convictions relate to, arise out of, or are connected "with his service as a policeman" (40 ILCS 5/5-227 (West 2010)), then the Pension Board will be ordered to terminate the pension benefits.[5] *Devoney*, 199 Ill. 2d at 423-24. Burge may also be ordered to repay the wrongfully received pension benefits since his federal felony convictions in June

---

[4]It bears noting that the Attorney General's section 1-115(b) civil action did not allege a violation of section 5-182.

[5]The real issue raised in the civil action by the Attorney General regarding an alleged violation of section 5-227 also highlights the misguided notion that section 5-182 was violated by the tie vote. We are not remanding to the Board to correct a purported violation of the Pension Code based on the tie vote by the Board; we are remanding to the circuit court to allow the Attorney General to pursue her civil action.

2010.[6]

¶ 43       I specially concur in the judgment.

---

[6]Notably, the purported violation of section 5-182 triggers no additional consequences as to the pension benefits received by Burge since the Board's decision of January 31, 2011, should a violation of section 5-227 trigger a reimbursement of the pension benefits received since Burge's convictions in 2010.