# Illinois Official Reports

## Supreme Court

---

**People ex rel. Madigan v. Burge, 2014 IL 115635**

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General of Illinois, Appellee, v. JON BURGE *et al.*, Appellants. |
| Docket Nos. | 115635, 115645 cons. |
| Filed | July 3, 2014 |
| Rehearing denied | September 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A pension board which awarded benefits to a retired policeman in 1997 had exclusive original jurisdiction, under a 1972 statute, to terminate them for commission of an employment-related felony; but, where it did not do so, the Attorney General's circuit court action to do so by enjoining a violation of the Pension Code under a less specific 1982 statute was properly dismissed for lack of subject-matter jurisdiction. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Rita M. Novak, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

Counsel on Appeal

Michael H. Moirano and Claire Gorman Kenny, of Nisen & Elliott, LLC, of Chicago, for appellant Jon Burge.

David R. Kugler, of Chicago, for appellant Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago *et al.*

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro and Carolyn E. Shapiro, Solicitors General, and Richard S. Huszagh, Assistant Attorney General, of Chicago, of counsel), for appellee.

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Thomas, Karmeier, and Theis concurred in the judgment and opinion.
Chief Justice Garman dissented, with opinion, joined by Justice Kilbride.
Justice Freeman dissented, with opinion.

**OPINION**

¶ 1      This case presents a question regarding the termination of pension benefits being received by defendant Jon Burge, a former Chicago police supervisor who was convicted of committing perjury in a civil lawsuit after he denied having any knowledge of suspects being tortured in the police unit under his command. What is at issue, however, is not whether Burge, or any similarly situated police officer, is legally entitled to continue receiving pension benefits. Rather, the narrow question we must answer here is who decides whether the pension benefits should be terminated.

¶ 2      The circuit court of Cook County held that deciding whether to terminate Burge's pension benefits was a "quintessential adjudicative function" which rested exclusively within the original jurisdiction of defendant Retirement Board of the Policemen's Annuity and Benefit Fund of Chicago (the Board), subject to review under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)). The appellate court reversed, holding that the circuit court had concurrent, original jurisdiction with the Board to determine whether Burge's benefits should be terminated. 2012 IL App (1st) 112842. For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 3                           BACKGROUND

¶ 4      Jon Burge was a Chicago police officer from approximately 1970 to 1993. During a portion of that time, he served as supervisor of the violent crimes unit detectives in Area Two, a geographical division of the Chicago police department. In 1997, Burge applied to the Board for pension benefits from the Policemen's Annuity and Benefit Fund of Chicago (the Fund).

See 40 ILCS 5/5-101 (West 2012) (authorizing the creation of a policemen's annuity and benefit fund). The Board awarded the benefits.

¶ 5 In 2003, a federal civil rights lawsuit was filed in which the plaintiff alleged that he was physically tortured and abused by police officers under Burge's command at Area Two. Although the plaintiff did not accuse Burge personally of abusing him, the plaintiff did allege that Burge was aware of a pattern of torture and abuse being conducted by police officers in Area Two and that Burge had participated in such practices. In response to written interrogatories in the lawsuit, Burge denied under oath having any knowledge of, or participation in, the torture or abuse of persons in the custody of the Chicago police department.

¶ 6 In 2008, Burge was indicted by a federal grand jury on one felony count of perjury (18 U.S.C. § 1621(1) (2006)), and two felony counts of obstruction of justice (18 U.S.C. § 1512(c)(2) (2006)), for making false statements in his responses to the interrogatories. In 2010, Burge was convicted by a jury on all three counts and was sentenced to four and one-half years' imprisonment. His convictions were affirmed on appeal. *United States v. Burge*, 711 F.3d 803 (7th Cir. 2013). Burge's conduct in the civil lawsuit is the only criminal activity for which he has been convicted. Burge has not been indicted or convicted for conduct which occurred while he was still serving on the Chicago police department.

¶ 7 In January 2011, the Board held a hearing to determine whether, under section 5-227 of the Illinois Pension Code (40 ILCS 5/5-227 (West 2010)), Burge's pension benefits should be terminated because of his federal felony convictions. Section 5-227 states, in relevant part, that "[n]one of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as a policeman." At the hearing, Burge maintained that his felony convictions related solely to the giving of false testimony in a civil lawsuit filed several years after his retirement from the police force and, therefore, did not justify terminating his pension benefits.

¶ 8 At the conclusion of the hearing, a motion was made by a Board member to terminate Burge's pension benefits. The Board is composed of eight trustees, four of whom are appointed by the mayor of Chicago, and four of whom are current or former police officers elected by police officer participants in the Fund. See 40 ILCS 5/5-178 (West 2012). The Board divided 4 to 4 on the question of whether Burge's felony convictions for perjury and obstruction of justice in the civil lawsuit related to, arose out of, or were connected with his employment as a Chicago police officer. The four city-appointed trustees voted in favor of the motion to terminate benefits, while the four officer-elected trustees voted against the motion. The Board concluded that because "the motion was not passed," "Burge was allowed to continue to receive his monthly pension benefits." The Board issued a written decision to that effect on January 31, 2011. No administrative review was sought from this decision.

¶ 9 On February 7, 2011, one week after the Board had issued its decision, the Attorney General, on behalf of the State of Illinois, filed the complaint at issue in this case, naming as defendants Burge, the Board, and the individual trustees of the Board in their official capacities. The complaint was brought pursuant to section 1-115 of the Pension Code. That provision authorizes the Attorney General to bring a civil action to "[e]njoin any act or practice which violates any provision of this Code" or "[o]btain other appropriate equitable relief to redress any such violation or to enforce any such provision." 40 ILCS 5/1-115 (West 2012). In

her complaint, the Attorney General alleged that "[b]y continuing to pay public pension benefits to Jon Burge following three felony convictions relating to, arising out of, and in connection with his service as a police officer, Defendant Board and Defendant Trustees are violating Section 227 of Article 5 of the Illinois Pension Code." The complaint did not allege any other violations of the Pension Code or wrongful conduct by the Board or its trustees. The complaint sought a preliminary and permanent injunction ordering the Board to cease all payments to Burge and an order requiring Burge to repay any benefits received since his convictions.

¶ 10    Burge, and the Board and trustees, subsequently filed motions to dismiss the complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)). Defendants alleged in their motions that the circuit court lacked subject-matter jurisdiction to consider the Attorney General's complaint. The circuit court agreed.

¶ 11    In a written order, the circuit court noted that section 5-189 of the Pension Code (40 ILCS 5/5-189 (West 2012)), states in pertinent part that "[t]he Board shall have exclusive original jurisdiction in all matters relating to or affecting the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds." The circuit court further noted that, while the statutory prohibition against providing pension benefits to a person convicted of a felony relating to, arising out of, or in connection with his service as a policeman is absolute, "in each individual case, the statutory standard will have to be applied to discrete facts and circumstances." The circuit court concluded that this was a "quintessential adjudicative function" which section 5-189 conferred exclusively on the Board.

¶ 12    In addition, the circuit court observed that, under 5-228 of the Pension Code (40 ILCS 5/5-228 (West 2012)), final administrative decisions of the Board are subject to judicial review for error solely as provided by the Administrative Review Law. Such review is exclusive and alternate methods of direct review or collateral attack are not permitted. See, *e.g.*, *Emerald Casino, Inc. v. Illinois Gaming Board*, 366 Ill. App. 3d 622, 625 (2006). The circuit court concluded that the Board had rendered a final administrative decision when it ruled on the motion to terminate Burge's pension benefits. The circuit court then reasoned that the Attorney General's complaint would present to the court "the same issue that the Board decided" but would do so outside the confines of the Administrative Review Law. Thus, in the view of the circuit court, the complaint was an impermissible collateral attack on the Board's decision. The circuit court therefore dismissed the Attorney General's complaint for lack of subject-matter jurisdiction.

¶ 13    The Attorney General appealed the dismissal and the appellate court reversed. 2012 IL App (1st) 112842. The appellate court stated:

> "Viewing the statute as a whole, we find no explicit language in the statute expressing a legislative intent to divest circuit courts of the subject matter jurisdiction to hear civil actions brought by the Attorney General under section 1-115(b) of the Pension Code. As a result, we find that the circuit court erred in interpreting section 5-189 of the Pension Code as divesting it of the subject matter jurisdiction to address the Attorney General's claims. We find that section 1-115(b) gives the circuit court concurrent subject matter jurisdiction with the Pension Board to hear the disputed pension issues presented in the Attorney General's complaint." *Id*. ¶ 25.

¶ 14      After reaching this conclusion, the appellate court then observed that when the circuit court and an administrative agency have concurrent jurisdiction, the circuit court may, under the doctrine of primary jurisdiction, stay judicial proceedings and permit the administrative agency to first address the issue and bring its expertise to bear on the matter in dispute. *Id*. ¶ 26 (citing *Village of Itasca v. Village of Lisle*, 352 Ill. App. 3d 847, 853 (2004)). Because the Board in this case had already addressed the termination of Burge's pension benefits at the time the Attorney General's complaint was filed, the appellate court treated the Board's adjudication of the matter, in effect, as an exercise of primary jurisdiction.

¶ 15      Continuing, the appellate court then pointed to section 5-182 of the Pension Code (40 ILCS 5/5-182 (West 2012)), which provides that "no pension, annuity, or benefit shall be allowed or granted and no money shall be paid out of the fund unless ordered by a vote of the majority of the members of the board." The court concluded that the Board violated this section when it determined that a tie vote meant that Burge was allowed to continue to receive his monthly pension benefits. Based on this violation, the appellate court reasoned that the Board's decision to continue Burge's benefits was "voidable" (2012 IL App (1st) 112842, ¶ 30), and the circuit court was not required to give the Board's exercise of primary jurisdiction any deference. The appellate court therefore reinstated the Attorney General's complaint and remanded the cause to the circuit court to determine, as an original matter, whether Burge's felony convictions related to, arose out of, or were connected with his service as a police officer in violation of section 5-227.

¶ 16      Burge, and the Board and its trustees, filed petitions for leave to appeal in this court. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). The petitions were granted and the cases consolidated for review.

¶ 17                                    ANALYSIS

¶ 18      At issue before us is whether the circuit court properly dismissed the Attorney General's complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)). A motion to dismiss under section 2-619 admits the legal sufficiency of the plaintiff's complaint, but asserts an affirmative matter which defeats the claim. In this case, the asserted affirmative matter is a lack of subject-matter jurisdiction (735 ILCS 5/2-619(a)(1) (West 2012)). Our review of a dismissal under section 2-619 is *de novo*. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 12 (2005).

¶ 19      Subject-matter jurisdiction refers to a tribunal's "power to hear and determine cases of the general class to which the proceeding in question belongs." (Internal quotation marks omitted.) *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 27. The Illinois Constitution of 1970 gives original jurisdiction to the circuit courts over all justiciable matters except where this court has exclusive and original jurisdiction relating to the redistricting of the General Assembly and the ability of the Governor to serve or resume office. *Id*. However, this court has held that the General Assembly may confer exclusive original jurisdiction on an administrative body when it enacts a "comprehensive statutory administrative scheme" that "explicitly" vests original jurisdiction in the administrative agency. *Id*. Whether the legislature has done so is a question of statutory interpretation. *Id*.

¶ 20      Defendants contend there is an explicit statement from the General Assembly vesting exclusive, original jurisdiction with the Board when a claim is made that a police officer's

pension benefits should be terminated because of a felony conviction. That statement, according to defendants, is found in section 5-189 of the Pension Code, which states that the Board shall have the power:

> "To authorize payments. To authorize the payment of any annuity, pension, or benefit granted under this Article or under any other Act relating to police pensions, heretofore in effect in the city which has been superseded by this Article; to increase, reduce, or suspend any such annuity, pension, or benefit whenever any part thereof was secured or granted or the amount thereof fixed, as the result of misrepresentation, fraud, or error; provided, the annuitant, pensioner or beneficiary concerned shall be notified and given an opportunity to be heard concerning such proposed action.
>
> The Board shall have exclusive original jurisdiction in all matters relating to or affecting the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds." 40 ILCS 5/5-189 (West 2012).

¶ 21    Defendants acknowledge, as they must, that not all legal challenges to "matters relating to or affecting the fund" fall within the exclusive jurisdiction of the Board. For example, as this court has explained, an administrative agency, such as the board of trustees of a retirement system, is a creature of statute and, as such, has only the authority that is conferred upon it by law. *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 553 (2005); *Rossler v. Morton Grove Police Pension Board*, 178 Ill. App. 3d 769, 773 (1989). Consequently, when a retirement board acts in a manner which is not merely erroneous but which exceeds the "inherent power" of the board granted to it under the Pension Code, the board is said to act without "jurisdiction." *Newkirk v. Bigard*, 109 Ill. 2d 28, 36 (1985). Such actions of a board are "void" and may be attacked at any time, in any court, either directly or collaterally. *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243-44 (1989); *Genius v. County of Cook*, 2011 IL 110239, ¶ 25; see also, *e.g.*, *Landfill, Inc. v. Pollution Control Board*, 74 Ill. 2d 541, 550 (1978) (an administrative rule may be challenged on its face in the circuit court on the grounds of being unauthorized by the enabling legislation). Thus, under long-standing law, a circuit court has jurisdiction to consider a complaint that the Board is exceeding its "inherent authority" under the Pension Code and its actions are void, even though the matter raised in the complaint may "relate to" or "affect" the Fund. Defendants do not dispute that an action by the Board which is beyond its "inherent authority" constitutes a "violation" of the Pension Code and may be challenged under section 1-115.

¶ 22    Defendants further acknowledge, as again they must, that section 1-115, which is largely identical to parts of section 502(a) of the federal Employment Retirement Income Security Act of 1974 (ERISA), Pub. L. No. 93-406, 88 Stat. 829, 891, was enacted primarily to authorize actions in the circuit court which allege that pension fund fiduciaries, such as the trustees of a retirement board, have breached a fiduciary duty set forth in the Pension Code. A legal challenge alleging that the trustees of a retirement board have breached a fiduciary duty cannot be brought before the board itself since "no man who has a personal interest in the subject matter of [a] decision in a case may sit in judgment on that case." *In re Heirich*, 10 Ill. 2d 357, 384 (1956); *Girot v. Keith*, 212 Ill. 2d 372, 380 (2004). Defendants therefore do not dispute that an allegation that the trustees of the Board have breached a fiduciary duty by, for example,

making fraudulent investments, is properly brought in the circuit court under section 1-115 even though it may "relate to" or "affect" the Fund.

¶ 23    Given these qualifications, defendants assert that what falls exclusively within the original jurisdiction of the Board under section 1-189 are ordinary adjudications related to or affecting the Fund. Or, stated otherwise, actions which come within the exclusive, original jurisdiction of the Board are those which require the resolution of disputed facts and the application of existing Pension Code provisions to fact-specific circumstances. See, *e.g.*, *E&E Hauling, Inc. v. Pollution Control Board*, 116 Ill. App. 3d 586, 598 (1983) (an adjudicative proceeding is one " 'designed to adjudicate disputed facts in particular cases' " (quoting *United Wales v. Florida East Coast Ry. Co.*, 410 U.S. 224, 245 (1973))).

¶ 24    Defendants contend that deciding whether to terminate Burge's pension benefits requires the application of an existing Pension Code provision to the particular facts of his case and is, therefore, an ordinary adjudication related to the Fund. Defendants further emphasize that, under the plain language of section 5-189, the Board's jurisdiction to conduct such adjudications is "exclusive" rather than concurrent with the circuit court. Thus, according to defendants, original jurisdiction to determine whether Burge's pension benefits should be terminated is vested exclusively in the Board pursuant to section 5-189.

¶ 25    Like the circuit court, defendants also note that under section 5-228 of the Pension Code (40 ILCS 5/5-228 (West 2012)), final administrative decisions made by the Board are reviewed for error solely under the Administrative Review Law. In this case, the Attorney General's complaint alleged that the Board's continued payment of pension benefits to Burge, after the motion to terminate the benefits failed, was erroneous. However, that challenge was made outside the provisions of the Administrative Review Law. Therefore, according to defendants, the circuit court properly determined that the Attorney General's complaint was an impermissible collateral attack on the Board's decision and that the court lacked jurisdiction to hear the Attorney General's complaint.

¶ 26    As she did in the circuit court, the Attorney General, in response, points to section 1-115 of the Pension Code, which provides:

> "A civil action may be brought by the Attorney General or by a participant, beneficiary or fiduciary in order to:
>
>> (a) Obtain appropriate relief under Section 1-114 of this Code;
>>
>> (b) Enjoin any act or practice which violates any provision of this Code; or
>>
>> (c) Obtain other appropriate equitable relief to redress any such violation or to enforce any such provision." 40 ILCS 5/1-115 (West 2012).

¶ 27    The Attorney General does not disagree with defendants that applying section 5-227 to the facts of Burge's case to determine whether his pension benefits should be terminated constitutes an ordinary adjudicative proceeding related to or affecting the Fund. Nor does the Attorney General disagree with defendants that the Board has jurisdiction over such adjudications. Where the Attorney General parts company with defendants is with their assertion that the Board's original jurisdiction under section 5-189 is exclusive. According to the Attorney General, section 1-115 grants the circuit court concurrent, original jurisdiction over ordinary adjudications related to or affecting the Fund.

¶ 28    In support, the Attorney General emphasizes the breadth of section 1-115, noting that it applies to "any" act or practice which violates "any" provision of the Pension Code. That

criterion is met, the Attorney General maintains, by her claim that the payment of pension benefits to Burge violates section 5-227 of the Pension Code. The Attorney General also notes that section 1-115 was enacted by the General Assembly in 1982, 10 years after section 5-189 was amended in 1972 to provide for exclusive, original jurisdiction in the Board. From this, the Attorney General asserts that section 1-115 "takes precedence" over section 5-189, with the consequence that section 1-115 "gives circuit courts concurrent jurisdiction over claims by the Attorney General to enjoin a violation of the Pension Code even if the Board also has jurisdiction to adjudicate the same question." In other words, in the view of the Attorney General, the General Assembly repealed the "exclusive" jurisdiction provided to the Board under section 5-189 when it enacted section 1-115. Thus, the Attorney General maintains that when a police officer is convicted of a felony offense, the issue of whether his pension benefits should be terminated may be pursued either in the circuit court, in an action filed by the Attorney General, a participant, a beneficiary or a fiduciary, or in an action before the Board.

¶ 29    Continuing with her argument, the Attorney General does not dispute that, because the Board had already addressed the termination of Burge's pension benefits at the time her complaint was filed, the Board effectively exercised primary jurisdiction over the matter. See generally *People v. NL Industries*, 152 Ill. 2d 82, 94-96 (1992) (discussing primary jurisdiction). However, unlike the appellate court below, which determined that no deference was due the Board's decision because it stemmed from a tie vote, the Attorney General asserts that no deference is due to the Board in this instance because she was not a party to the Board's proceeding addressing whether to terminate Burge's pension benefits. For this reason, according to the Attorney General, she "cannot be bound by the outcome of that proceeding under preclusion principles." In sum, the Attorney General maintains that the circuit court has concurrent original jurisdiction over ordinary adjudications related to or affecting the Fund, and that her office, a participant, a beneficiary or a fiduciary may file an action at any time in the circuit court under section 1-115 to adjudicate whether a police officer's pension benefits should be terminated, reinstated or adjusted, so long as the filer of the action was not a party in a previous proceeding before the Board on the same matter. Therefore, the Attorney General contends, the circuit court improperly dismissed her complaint in this case. We disagree.

¶ 30    As the Attorney General notes, section 1-115 is a broadly worded provision, covering "any" act or practice which violates "any" provision of the Pension Code. Section 5-189, in contrast, does not possess the same breadth. Section 5-189 confers original jurisdiction on the Board only for ordinary adjudications related to or affecting the Fund. Other original actions, such as those alleging that the trustees of the Board have breached a fiduciary duty set forth in the Pension Code by, for example, making fraudulent investments, may be brought in the circuit court under section 1-115, but not before the Board under section 5-189. Moreover, the Board's original jurisdiction is limited to matters "relating to or affecting the fund." Any violation of a Pension Code provision which is not related to the fund may be challenged in an original action in the circuit court under section 1-115, but not before the Board under section 5-189. In short then, section 5-189 is the more specific provision than section 1-115.

¶ 31    "[I]t is a commonplace of statutory construction" that when two conflicting statutes cover the same subject, "the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384-85 (1992) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)). "[T]he law is settled that [h]owever inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same

- 8 -

enactment." (Internal quotation marks omitted.) *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 228 (1957). "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. ___, ___, 132 S. Ct. 2065, 2071 (2012). Here, the broad language of section 1-115, which states that "any" violation of a Pension Code provision may be challenged in circuit court, is in conflict with section 5-189, which provides that ordinary adjudications related to or affecting the Fund are within the "exclusive," original jurisdiction of the Board. Accordingly, to eliminate this contradiction, the specific provision, section 5-189, must be construed as an exception to the general provision, section 1-115.

¶ 32     Citing the canon which holds that when two statutes are in conflict the one which was enacted later should prevail (see, *e.g.*, *Village of Chatham, Illinois v. County of Sangamon, Illinois*, 216 Ill. 2d 402, 431 (2005)), the Attorney General maintains that section 1-115, as the more recently enacted provision, should be given precedence over section 5-189. Justice Freeman, in dissent, adopts a similar position. *Infra* ¶ 88 (Freeman, J., dissenting). However, the canon that the specific governs the general holds true " 'regardless of the priority of enactment.' " *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (quoting *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974)); 82 C.J.S. *Statutes* § 482 (2010) ("The more specific of two statutes dealing with a common subject matter generally will prevail whether it has been passed before or after the more general statute."). Indeed, because repeals by implication are disfavored, the canon that the specific governs the general applies with special force where, as here, the earlier provision is specific and the later, general provision makes no mention of the earlier provision. As this court has stated, "a later statute general in its terms and not expressly repealing the prior special statute will ordinarily not affect the special provisions of the earlier statute." *People ex rel. Atwell Printing & Binding Co. v. Board of Commissioners*, 345 Ill. 172, 178 (1931); *Morton*, 417 U.S. at 549-51. Section 1-115 does not expressly repeal section 5-189 or, indeed, even mention the provision. We decline to hold that the exclusive, original jurisdiction of the Board to hear ordinary adjudications related to or affecting the Fund has been repealed by implication.

¶ 33     And it is apparent why the General Assembly would exclude ordinary adjudications related to the Fund from the broad reach of section 1-115 as the Attorney General proposes. Section 1-115 does not limit the right to bring a cause of action solely to the Attorney General. Rather, it permits any "participant, beneficiary or fiduciary" to file a civil action to enjoin a violation of the Pension Code. Under the Attorney General's reasoning, a participant in the Fund who loses a benefits decision before the Board could file an administrative appeal in the circuit court, while at the same time, another participant who disagreed with the Board's determination could file a separate, original action under section 1-115. According to the Attorney General, the court in the latter action would not be required to give the Board's determination any deference, thus creating two simultaneous, potentially conflicting actions in the circuit court. Further, section 1-115 contains no specific time limit on the filing of such an action. If each of the groups listed in section 1-115 were allowed to adjudicate or readjudicate every grant, denial or adjustment of pension benefits made by the Board at any time, as the Attorney General contends, tremendous instability would be injected into the Fund. As the circuit court

below aptly noted, "[a]dministering a pension fund with so much instability and uncertainty is not just inconvenient, it is unworkable."

¶ 34    The Attorney General asserts that any legal or fiscal uncertainty that might arise from permitting actions such as this one to go forward as an original action under section 1-115 is merely speculative. But that is a determination for the legislature. For our purposes here, it is enough that we can discern a rational policy reason why the legislature would confer exclusive, original jurisdiction on the Board over ordinary adjudications related to or affecting the Fund. Accordingly, there is no justification for us to depart from well-established rules of statutory interpretation.

¶ 35    The Attorney General's complaint faces an additional problem. Section 5-228 of the Pension Code provides in pertinent part that the Administrative Review Law "govern[s] all proceedings for the judicial review of final administrative decisions of the retirement board provided for under this Article." 40 ILCS 5/5-228 (West 2012). Section 3-101 of the Code of Civil Procedure defines an "administrative decision" as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101 (West 2012). When the Administrative Review Law is applicable to an administrative agency, it provides the sole method of reviewing an agency decision. See, *e.g.*, *Emerald Casino, Inc. v. Illinois Gaming Board*, 366 Ill. App. 3d 622, 625 (2006); *Ardt v. Illinois Department of Professional Regulation*, 154 Ill. 2d 138, 148 (1992) ("The legislature enacted the Administrative Review Law in order to provide a simple single review from specified administrative decisions.").

¶ 36    In this case, the Board rendered a final "administrative decision" when it ruled on the motion to terminate Burge's pension benefits. The Attorney General's complaint does not seek administrative review of the Board's decision but, instead, asserts only that jurisdiction in the circuit court is proper under section 1-115. Further, as the circuit court noted, consideration of the Attorney General's complaint would require the court to determine whether Burge's felony convictions related to, arose out of, or were in connection with his service as a police officer—the same issue addressed by the Board. Thus, to allow the Attorney General's complaint to proceed, we would have to conclude that section 1-115 not only repealed the exclusive, original jurisdiction of the Board under section 5-189, but also implicitly repealed the exclusive application of the Administrative Review Law under section 5-228. We decline to so hold. See, *e.g.*, *People ex rel. Dickey v. Southern Ry. Co.*, 17 Ill. 2d 550, 555 (1959) (for an act to repeal an earlier one by implication, there must be "such total and manifest repugnance that the two cannot stand together").

¶ 37    The Attorney General asserts, however, that when the Board is presented with the question of whether pension benefits should be terminated, as it was in this case, "there is no participation by any party opposed to" the continuation of benefits and "there is therefore no real opportunity for review of a decision approving that expenditure." Because of "the heightened risk of an effectively unreviewable administrative decision" which could "result in a significant violation of the Pension Code, at potentially great cost to the public," the Attorney General maintains that complaints such as the one at issue here should be permitted under section 1-115.

¶ 38 Preventing significant violations of the Pension Code and ensuring the fiscal integrity of the Fund are important goals. To that end, certain challenges to actions taken by a retirement board have been authorized both within the context of administrative review and without. The circuit court, for example, may consider at any time a claim that a retirement board's decision was so seriously in error that the board exceeded its inherent authority and rendered a void decision. See, *e.g.*, *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 553-54 (2005); *Rossler v. Morton Grove Police Pension Board*, 178 Ill. App. 3d 769, 773 (1989). Similarly, a claim may be brought in circuit court that a pension board rule asserting administrative authority is not authorized under the Pension Code. See, *e.g.*, *Landfill, Inc. v. Pollution Control Board*, 74 Ill. 2d 541, 550 (1978). Fiduciary breaches, including, for example, fraudulent or corrupt decisions by the trustees of a retirement board, may also be challenged in circuit court. See 40 ILCS 5/1-115 (West 2012). In addition, our appellate court has recognized that, in certain circumstances, a governmental entity which was not a party before a pension board proceeding may contest a retirement board's administrative decision when it would result in the diminution of a pension fund. *Karfs v. City of Belleville*, 329 Ill. App. 3d 1198 (2002); see also *Board of Education of the City of Chicago v. Board of Trustees of the Public Schools Teachers' Pension & Retirement Fund*, 395 Ill. App. 3d 735 (2009) ("systemic miscalculations" by a pension board are not administrative decisions and may be challenged outside the Administrative Review Law). These avenues for legal challenge to the actions of a pension board exist in addition to general civil and criminal oversight, including criminal provisions found in the Pension Code itself (see, *e.g.*, 40 ILCS 5/1-125 (West 2012) (misdemeanor offense for trustee to accept gift from person seeking action from a retirement board), and regulatory oversight provided by the Department of Insurance (see 40 ILCS 5/1A-101 *et seq*. (West 2012) (charging the Department of Insurance with examining and investigating pension funds created under the Pension Code)).

¶ 39 None of the foregoing situations, however, are at issue in this case. The Attorney General's complaint does not seek review of an administrative decision which improperly diminished, or threatened to diminish, the Fund; the complaint does not allege a fiduciary breach by any member of the Board; and the complaint does not allege that the decision of the Board was beyond its inherent authority and therefore void. Indeed, the complaint contains no allegations that the fiscal integrity of the Fund has been harmed by the Board's decision, or that the pension benefits of other participants in the Fund have been placed at risk. Instead, the complaint alleges only that the Board's continued payment of pension benefits to Burge following the ruling on the motion to terminate those benefits was individualized error in this case. What the Attorney General is seeking then, through the filing of her complaint, is the authority to contest every administrative decision made by the Board, however limited in scope or effect, and to do so outside the confines of the Administrative Review Law. This would be a fundamental change in the workings of the Pension Code. This is not something we have authority to recognize absent express repeal of section 5-228 by the General Assembly.

¶ 40 Chief Justice Garman, in dissent, raises an argument not made by the Attorney General. Chief Justice Garman contends that the Attorney General's complaint should be read as alleging that the four officer-elected trustees of the Board violated their fiduciary duty to act "solely in the interest of the participants and beneficiaries" of the Fund (40 ILCS 5/1-109 (West 2012)), when they voted against the motion to terminate Burge's pension benefits. For this reason, according to Chief Justice Garman, the complaint should be permitted to go

- 11 -

forward under section 1-115. This is so even though the complaint does not mention the term "fiduciary," does not cite to any statutory fiduciary duty, and does not contain any allegations of bad faith, self-dealing or any similar wrongdoing on the part of any of the trustees.

¶ 41    Chief Justice Garman reasons, however, that if the circuit court should determine that Burge committed a felony related to, arising out of, or connected with his employment as a Chicago police officer, then Burge would not be a lawful participant in the Fund. And, paying benefits to someone who is not a member of the Fund is a breach of a trustee's fiduciary duty of loyalty to the Fund's participants. *Infra* ¶ 69 (Garman, C.J., dissenting) (to the extent a retirement board pays benefits to "a person declared to be a nonparticipant under the Pension Code" it fails to act solely in the interest of the Fund participants and beneficiaries). In other words, according to Chief Justice Garman, if the circuit court should determine that a Board trustee, although acting in good faith, made an error in legal reasoning in concluding that Burge should retain his pension benefits, that fact, in itself, will constitute a breach of the trustee's fiduciary duty of loyalty to the Fund participants. We cannot agree with this reasoning.

¶ 42    Further, under section 1-114 of the Pension Code, fiduciaries are personally liable to the pension fund for losses resulting from a breach of fiduciary duty. 40 ILCS 5/1-114 (West 2012). Thus, the import of Chief Justice Garman's reasoning is that a retirement board trustee who makes a good faith legal error in adjudicating a benefits decision will be personally obligated to reimburse the pension fund for that error. Understandably, the Attorney General has not made this argument, which if accepted, would likely mean that no person would be willing to serve as a retirement board trustee. We are confident this is not what the General Assembly intended. We therefore decline to *sua sponte* recast the Attorney General's complaint as alleging a breach of fiduciary duty by any of the trustees of the Board.

¶ 43    Finally, we note that the appellate court's conclusion that the Board violated section 5-182 of the Pension Code when it permitted Burge's pension benefits to continue following a tie vote could be read as providing a separate basis, by itself, for filing a complaint alleging a violation of the Pension Code under section 1-115. However, this, too, would be incorrect. Section 5-182 of the Pension Code is violated when a pension, annuity or benefit is approved by less than a majority of the Board. 40 ILCS 5/5-182 (West 2012). The Board's tie vote in this case did not approve or grant a pension benefit for Burge. The pension benefits Burge had been receiving were approved in 1997, long before the Board's vote was taken in January 2011. No statutory provision prohibits the continuation of pension benefits when a motion to terminate those benefits fails to garner a majority of votes on the Board.

¶ 44                                          CONCLUSION

¶ 45    This opinion should not be read, in any way, as diminishing the seriousness of Burge's actions while a supervisor at Area Two, or the seriousness of police misconduct in general. As noted, the question in this appeal is limited solely to who decides whether a police officer's pension benefits should be terminated when he commits a felony. On this issue, the legislative intent is clear. The decision lies within the exclusive, original jurisdiction of the Board under section 5-189. Accordingly, the judgment of the appellate court is reversed and the judgment of the circuit court dismissing the Attorney General's complaint is affirmed.

¶ 46          Appellate court judgment reversed.

¶ 47          Circuit court judgment affirmed.

¶ 48          CHIEF JUSTICE GARMAN, dissenting:

¶ 49          The majority resolves this case with the statutory canon that the specific controls the general, but it disregards some absurd results that follow. The majority makes untenable distinctions between fiduciary duties and renders certain types of breach unremediable under the Illinois Pension Code. Looking to legislative intent and examining the overall structure of the Pension Code also undermines the majority's conclusion that one section is more specific and should govern. I thus respectfully dissent.

¶ 50          The court faces two broadly worded statutory provisions in apparent conflict. The Attorney General (the State) contends payments to convicted felon Jon Burge violate section 5-227 of the Illinois Pension Code, and that the State can challenge those payments in the circuit court under section 1-115. 40 ILCS 5/5-227, 1-115 (West 2012). The Board and Burge counter that section 5-189 of the Pension Code gives the Board "exclusive original jurisdiction in all matters relating to or affecting the fund." As such, section 1-115 cannot grant an opportunity for review to the Attorney General, participants, beneficiaries, and fiduciaries, without destroying the application of the Administrative Review Law as mandated by section 5-228. See 40 ILCS 5/5-189, 5-228 (West 2012).

¶ 51          Read plainly, each provision threatens to invade and overwhelm the other. Section 1-115 makes no distinction between the Attorney General, participants, beneficiaries, and fiduciaries in granting them the ability to seek relief in the circuit court. 40 ILCS 5/1-115 (West 2012). Section 5-228 requires a participant or beneficiary to challenge a denial of benefits through administrative review. 40 ILCS 5/5-228 (West 2012). A broad reading of section 1-115, as offered by the State, could allow an artfully pleading participant or beneficiary to bypass administrative review altogether. A broad reading also tends to remove "exclusive" from the Board's "exclusive original jurisdiction" under section 5-189. 40 ILCS 5/5-189 (West 2012). Yet section 5-189 read literally could give the Board exclusive jurisdiction over its own fiduciary breaches. Section 1-114 requires a breaching fiduciary to make the fund whole. 40 ILCS 5/1-114 (West 2012). Section 5-189's grant of "exclusive original jurisdiction in all matters relating to or affecting the fund" could be read so broadly as to give the Board jurisdiction over a breach requiring reimbursement and "relating to [and] affecting the fund." It would be absurd to allow artful pleading to evade administrative review, but also absurd to give the Board jurisdiction over its own alleged shortcomings. In interpreting a statute, we presume the legislature did not intend absurd results. *In re Andrew B.*, 237 Ill. 2d 340, 348 (2010).

¶ 52          But the majority opinion does not avoid absurd results so much as it tries to temper one set of them.

¶ 53          Most troubling, the majority makes an arbitrary distinction between types of fiduciary breaches and renders the meaning of a fiduciary breach unclear. The natural outcome of the majority's reasoning that section 5-189 is more specific than section 1-115 is that jurisdiction under section 1-115 must give way whenever a matter relates to or affects the fund. Section 5-189, granting the Board "exclusive, original jurisdiction," would govern irrespective of whether the act "relating to or affecting the fund" is considered a fiduciary breach by the Board

itself. The majority's reasoning on specificity would give the Board jurisdiction to adjudicate its own fiduciary breaches, leaving section 1-115 with nothing to do. Apparently recognizing that this resolution is untenable, the majority states that "[f]iduciary breaches, including, for example, fraudulent or corrupt decisions by the trustees of a retirement board, may also be challenged in circuit court" under section 1-115. *Supra* ¶ 38. Neither the defendants' concession nor the majority's finding on this point comports at all with the majority's reasoning that the specific controls the general. But to prevent the absurdity of the Board having jurisdiction over its own fiduciary breaches, the majority draws a neat line between "ordinary adjudications related to or affecting the Fund" and fiduciary breaches. *Supra* ¶ 30. Implicit in this reasoning is the notion that one act cannot simultaneously be an "ordinary adjudication" and a fiduciary breach remediable by section 1-115. *Id.*

¶ 54        Yet the majority also ignores that trustees under the Pension Code have fiduciary duties beyond loyalty, including to diversify investments unless it is prudent not to do so (40 ILCS 5/1-109(c) (West 2012)), to administer with "the care, skill, prudence and diligence" of a prudent person under similar circumstances (40 ILCS 5/1-109(b) (West 2012)), and to administer in "accordance with the provisions of the Article of the Pension Code governing the retirement system or pension fund." 40 ILCS 5/1-109(d) (West 2012). The majority opinion apparently does not consider failures of these duties to be fiduciary breaches, and indeed the majority cannot reach its result if such fiduciary breaches are properly remediable under section 1-115. The State's complaint alleged that the Board's members were violating the Pension Code by paying benefits to Burge. Such an act would be, at minimum, a breach of the duty to administer in "accordance with the provisions of the Article of the Pension Code governing the retirement system or pension fund." It appears that the majority has determined that fiduciary breaches of "bad intent"—breaches of loyalty, fraud, self-dealing, and the like—are the only fiduciary breaches to be addressed by section 1-115. *Supra* ¶ 38. (providing that "fraudulent or corrupt decisions" may still be challenged in circuit court); *id.* ¶ 40 (arguing a lack of "allegations of bad faith, self-dealing or any similar wrongdoing" in the State's complaint). There is no basis in the statute or our case law for such a distinction. This distinction also conflicts with the legislative history discussed below. And if this erroneous distinction is not drawn, payments to a felon police officer could be cognizable either as a breach of the duty to obey the Pension Code or as a breach of the duty of prudence, meaning the majority would not reach its result.

¶ 55        Next, this arbitrary distinction between "bad intent" fiduciary breaches and the others appears to allow the Board to make a consistently erroneous interpretation of Illinois law without facing any challenge, so long as that erroneous interpretation favors a putative participant or beneficiary. Nothing in the record indicates one participant is permitted to intervene in another's hearing. Likewise, "administrative review is limited to parties of record before the administrative agencies and then only when their rights, duties or privileges are adversely affected by the decision." *Board of Education of Roxana Community School District No. 1 v. Pollution Control Board*, 2013 IL 115473, ¶ 20 (citing *Williams v. Department of Labor*, 76 Ill. 2d 72, 78 (1979)). No party has both opportunity and incentive to challenge an erroneous grant of benefits. As a result, the Board has the first and final word when it decides to grant benefits. This resolution allows the Board to ignore decisions of this court. I express no opinion as to the propriety of the Board's deadlock decision on the question of defendant Jon Burge's benefits, and I stress that the Board's underlying decision is not before us. But under

the majority's view, the Board could, in a hearing to terminate benefits under section 5-227, simply decline to follow *Devoney v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 199 Ill. 2d 414 (2002) (holding a police officer's felony mail fraud conviction related to his work as an officer, when he struck up friendship with co-felon while working as a police officer). No party would have both incentive and ability to challenge the Board's error. So long as the Board awards benefits, its errors will now go unchallenged.

¶ 56    Finally, the majority reaches its conclusion on specificity despite ample evidence that section 5-189 is not at all specific. It instead appears to employ a mere boilerplate phrase used by the legislature in drafting seven articles of the Pension Code, providing that the "Board shall have exclusive original jurisdiction in all matters relating to or affecting the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds." 40 ILCS 5/5-189 (West 2012). If that language is more specific than the civil enforcement language in section 1-115, substantially identical provisions in six other articles are also more specific than section 1-115. See 40 ILCS 5/6-185 (West 2012) (same provision for firefighters in cities over 500,000 population, with one change to capitalization); 40 ILCS 5/8-203 (West 2012) (substantially identical provision for municipal employees and officials in cities over 500,000 population: "The board shall have exclusive original jurisdiction in all matters relating to the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds."); 40 ILCS 5/9-196 (West 2012) (same provision as in article 8, this one for county employees and officers in counties over three million people); 40 ILCS 5/10-102, 10-103 (West 2012) (incorporating article 9 by reference, for forest preserve district employees); 40 ILCS 5/11-192 (West 2012) (same provision as in article 5, for laborers and retirement board employees of cities over 500,000 people); 40 ILCS 5/12-162 (West 2012) (substantially identical provision for park and retirement board employees in cities over 500,000 people: "To have exclusive original jurisdiction in all matters relating to or affecting the fund, including, in addition to all other matters, all claims for annuities, benefits or refunds under this Article."). Article 13 contains a similar, though less expansive, provision. 40 ILCS 5/13-706(e) (West 2012) ("The Board shall have exclusive original jurisdiction in all matters of claims for annuities, benefits and refunds."). Yet the majority concludes this seven-time repetition of the same words was, in each instance, an intentional and more specific grant of power than the fiduciary enforcement provision yet to come. Under the majority's interpretation, section 1-115 has very little enforcement role left to play when juxtaposed against "exclusive original jurisdiction," so the majority thus concludes the legislature intended section 1-115 to mean little or nothing[1] when applied to seven articles of the Pension Code. This cannot be reconciled with the legislative history. One could more easily find that section 1-115, pertaining to the circuit court enforcement of fiduciary duties, is more specific than the pervasive authority over investment and benefits decisions granted to the Board in section 5-189.

[1]The majority does not provide any examples of fiduciary breaches that could be addressed by the circuit court, aside from "fraudulent" or "corrupt" ones. Given the paucity of the record from the Board in this case, it is unclear how a circuit court would, as a threshold matter, evaluate whether a board's actions were fraudulent or corrupt before deciding if it had subject-matter jurisdiction. It also suggests the duty of prudence and the duty to obey the Pension Code are statutorily imposed but effectively unenforceable. 40 ILCS 5/1-109 (West 2012).

¶ 57    Rather than allowing one section to prevent operation of the other, this court should try to harmonize the two provisions, if possible. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25. Given the conflict in language between sections 1-115 and 5-189, this court should look to the legislative history of the later-enacted section 1-115 to determine what impact the legislature intended it would have on existing provisions. Public Act 82-960 (eff. Aug. 25, 1982) added section 1-115 to the Pension Code, and it amended Pension Code section 1-109 to change the Board and similar entities from having "trustees" to having "fiduciaries." The legislative debates indicate an intent to broaden fiduciaries' investment authority to the "prudent man" standard, in hopes of increasing fund investment yields and stimulating the economy. 82d Ill. Gen. Assem., Senate Proceedings, June 29, 1982, at 41-42 (statements of Senator Collins). The legislature explicitly adopted this standard from the federal Employee Retirement Income Security Act (ERISA) (Pub. L. No. 93-406, 88 Stat. 891 (1974)) and debated whether Illinois's implementation of it could provide sufficient and comparable protection to ERISA. 82d Ill. Gen. Assem., Senate Proceedings, June 29, 1982, at 39-40 (statements of Senator D'Arco). Beyond the debates, there is striking overlap of language between the definitions of "fiduciary," "party in interest," and "investment manager" added to Pension Code section 1-101.1[2] and ERISA section 3.[3] The definitions are nearly identical. Public Act 82-960 also brought Pension Code section 1-109, defining the duties of fiduciaries, into an even closer match with ERISA section 404[4] than it previously was.

¶ 58    The legislature did more than simply borrow ERISA's fiduciary standards. It also borrowed ERISA's enforcement provision. Pension Code section 1-115 appears under the caption "Civil Enforcement" and provides:

> "A civil action may be brought by the Attorney General or by a participant, beneficiary or fiduciary in order to:
>
>> (a) Obtain appropriate relief under Section 1-114 of this Code;
>>
>> (b) Enjoin any act or practice which violates any provision of this Code; or
>>
>> (c) Obtain other appropriate equitable relief to redress any such violation or to enforce any such provision." 40 ILCS 5/1-115 (West 2012).

¶ 59    As the State has noted, Pension Code section 1-115 is nearly identical to certain portions of ERISA section 502, codified at 29 U.S.C. § 1132 (2012) and titled "Civil Enforcement." ERISA section 502 provides:

> "(a) Persons empowered to bring a civil action
>
> A civil action may be brought—
>
>> ***
>>
>> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

---

[2]These definitions have been amended slightly and are now spread across 40 ILCS 5/1-101.2 to 1-101.4 (West 2010).

[3]29 U.S.C. §§ 1002(21)(A), (14)(A)-(I), (38)(A)-(C) (2012).

[4]29 U.S.C. § 1104 (2012).

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

\*\*\*

(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter[.]" 29 U.S.C. § 1132 (2012).

¶ 60        With minor variances in wording and structure, the Illinois legislature apparently took its enforcement provision directly from ERISA. ERISA section 502 allows the Secretary of Labor or any participant, beneficiary, or fiduciary to bring an action for relief under ERISA section 1109, which requires a breaching fiduciary to make the plan whole. Pension Code section 1-115 allows the Attorney General or any participant, beneficiary, or fiduciary to bring an action for relief under Pension Code section 1-114, which requires a breaching fiduciary to make the plan whole. The wording of the ERISA section 1109 and Pension Code section 1-114 provisions is similarly nearly identical.[5]

¶ 61        ERISA section 502 additionally provides that the Secretary of Labor or any participant, beneficiary, or fiduciary can bring a civil action "to enjoin any act or practice which violates any provision of this subchapter," or for "other appropriate equitable relief" "to redress such violation" or "to enforce any provision of this subchapter." 29 U.S.C. § 1132 (2012). Pension Code section 1-115 allows the Attorney General or any participant, beneficiary, or fiduciary to bring a civil action to "[e]njoin any act or practice which violates any provision of this Code" or to "[o]btain other appropriate equitable relief to redress any such violation or to enforce any such provision."[6] 40 ILCS 5/1-115(b), (c) (West 2012). Thus, we can see that the legislature wrote ERISA fiduciary standards and ERISA fiduciary enforcement into Illinois law with the same public act.

¶ 62        The legislative debates likewise reveal that the legislature intended for the Attorney General to be responsible for oversight and enforcement of fiduciary duties:

"Under the prudent man rule comes under the definition of the fiduciary and the trustees making what … the investment in what is the best, safe, best producing under the fiduciary authority, and if they make a bad investment, *then the Attorney General can recover damages for that individual's bad investment* into the pension fund, so the pension fund doesn't suffer a loss." (Emphasis added.) 82d Ill. Gen. Assem., Senate Proceedings, June 29, 1982, at 41 (statements of Senator Davidson).

---

[5]Pension Code section 1-114 was, like section 1-115 and the "fiduciary" definition, added by Public Act 82-960.

[6]To the extent there is a distinction between ERISA subsections 502(a)(2)-(a)(3), (a)(5) and Pension Code section 1-115, it is that ERISA section 502 additionally allows participants, beneficiaries, and fiduciaries to seek redress for violations of an ERISA plan as well as applicable law. As the Board's determinations are governed by the Pension Code rather than an ERISA plan, any distinction is immaterial here.

The legislature thus explicitly contemplated the Attorney General would be involved in enforcing the fiduciary duties of pension boards. The legislature also contemplated that these challenges for breaches of fiduciary duty would take place not before a pension board itself, but in court. Prompted with a hypothetical on a fiduciary making a mortgage investment in real estate that turned out badly, and an inquiry as to whether that fiduciary would face personal liability, Senator Davidson said the fiduciary would be liable only if he breached the fiduciary rules. Senator Donnewald replied, "That, of course, is subject to a suit and for the … for the courts to decide. You don't really know that until it's decided." 82d Ill. Gen. Assem., Senate Proceedings, June 29, 1982, at 44 (statements of Senator Donnewald). Senator Egan replied, in part, that Illinois law would be brought "into line [with] the prudent man standard as is set out in the ERISA congressional legislation, and it is subject to judicial determination in each and every state ***. *** It's subject to judicial review." 82d Ill. Gen. Assem., Senate Proceedings, June 29, 1982, at 44 (statements of Senator Egan).

¶ 63    In sum, the legislature deliberately and explicitly imported ERISA's fiduciary duties and copied its enforcement provision almost exactly. In doing so, it indicated that the Attorney General would provide oversight of fiduciary duties and would pursue remedies in the circuit court, where it was alleged a fiduciary failed to meet his or her duty. This presents a close parallel to enforcement by the Secretary of Labor in federal courts under ERISA.

¶ 64    Federal courts interpreting ERISA section 502 have confronted essentially the same question we confront today: how to provide for civil enforcement while also respecting legislative intent that benefits decisions pass through the administrative process first. A reasonable method to effectuate the legislature's intent in resolving the conflict between sections 5-189 and 1-115, then, is to look to how federal law addresses jurisdiction under ERISA section 502. ERISA generally requires plan participants to exhaust all administrative remedies before pursuing a remedy in federal court. *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008). The Supreme Court's analysis of ERISA section 502 has accordingly been sensitive to distinguishing between those cases which must proceed through administrative review and those which may proceed directly to court. *Id.* at 258-59 (Roberts, C.J., concurring in part and concurring in the judgment, joined by Kennedy, J.) ("The significance of the distinction between a § 502(a)(1)(B) claim and one under § 502(a)(2) is not merely a matter of picking the right provision to cite in the complaint. Allowing a § 502(a)(1)(B) action to be recast as one under § 502(a)(2) might permit plaintiffs to circumvent safeguards for plan administrators that have developed under § 502(a)(1)(B). Among these safeguards is the requirement, recognized by almost all the Courts of Appeals, [citation], that a participant exhaust the administrative remedies mandated by ERISA § 503, 29 U.S.C. § 1133, before filing suit under § 502(a)(1)(B). Equally significant, this Court has held that ERISA plans may grant administrators and fiduciaries discretion in determining benefit eligibility and the meaning of plan terms, decisions that courts may review only for an abuse of discretion.").

¶ 65    Federal courts have held that ERISA subsections 502(a)(2)-(a)(3) and (a)(5) can be used only for equitable remedies, as opposed to remedies at law. See, *e.g.*, *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 209-19 (2002) (discussing at length the distinction between legal remedies and equitable remedies under ERISA). Such suits are not subject to the requirement that a participant exhaust administrative appeals before seeking redress in the courts. *LaRue*, 552 U.S. at 258-59 (Roberts, C.J., concurring in part and

- 18 -

concurring in the judgment, joined by Kennedy, J.). This is particularly true where the remedy sought does not accrue to an individual's benefit, but instead to the plan as a whole. See *Smith v. Sydnor*, 184 F.3d 356 (4th Cir. 1999) (finding no requirement to exhaust administrative appeals where participant sued for recovery for fiduciary breach on behalf of the plan). This preserves Congress's goal that benefit plans be administrable, while effecting Congress's intent that there be enforcement in the courts for fiduciary violations of ERISA. See *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 146 (1985) (describing the "six carefully integrated civil enforcement provisions found in § 502(a)" as part of "ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute' " (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361 (1980))).

¶ 66 Importantly, Illinois's civil enforcement provision is drawn from ERISA subsections 502(a)(2)-(a)(3) and (a)(5). Pension Code section 1-115 does not bear similarity to ERISA subsection 502(a)(1)(B), which a plan participant may use to recover benefits due. A claim under Pension Code section 1-115 would not face the administrative exhaustion requirement if brought under ERISA subsections 502(a)(2)-(a)(3) or (a)(5). This comports with the underlying purpose of the two statutes: to enforce fiduciary duties *against fiduciaries*. It is difficult to conceive that the legislature intended that, where the Attorney General brought an enforcement action against a fiduciary that would have an effect on the fund, the complaint would be subject to the exclusive original jurisdiction of the Board. See 40 ILCS 5/5-189 (West 2012) ("The Board shall have exclusive original jurisdiction in all matters relating to or affecting the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds.").

¶ 67 Having reviewed the federal courts' careful balance between participants seeking review of a benefits decision and the broad language of ERISA subsections 502(a)(2)-(a)(3) and (a)(5), I conclude Illinois courts would best give effect to the legislature's intent to selectively incorporate ERISA by striking the same balance. Looking to ERISA to harmonize these provisions also eliminates the concern that allowing civil enforcement under Pension Code section 1-115 would cause it to swallow the Board's jurisdiction under section 5-189. It would also avoid a repeal by implication, which the majority seeks to avoid. *Supra* ¶ 36. Instead, striking this balance would simply open a board's ordinary adjudications to collateral attack under the terms of section 1-115, where the action may constitute fiduciary breach. Accordingly, if a cause of action is cognizable under ERISA subsections 502(a)(2)-(a)(3) and (a)(5), it should be cognizable under Illinois's identical provision in Pension Code section 1-115. The question, then, is whether payments in violation of Pension Code section 5-227 would be cognizable as a failure of fiduciary duty under ERISA subsections 502(a)(2)-(a)(3) and (a)(5). I conclude they would.

¶ 68 Pension Code section 1-109 provides that a fiduciary shall discharge his duties "solely in the interest of the participants and beneficiaries,"[7] that he shall carry out his duties "[w]ith the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an

---

[7]Like sections 1-114 and 1-115 and the definition for "fiduciary," this language was added by Public Act 82-960.

- 19 -

enterprise of a like character with like aims,"[8] and that he shall do so "[i]n accordance with the provisions of the Article of the Pension Code governing the retirement system or pension fund."[9] 40 ILCS 5/1-109 (West 2012). Section 5-227 provides, in relevant part, that "[n]one of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as a policeman." 40 ILCS 5/5-227 (West 2012). The section 1-109 duty provisions largely parallel provisions of ERISA.

¶ 69    To the extent a pension board pays benefits to a person declared to be a nonparticipant under the Pension Code, it fails to act "solely in the interest of participants and beneficiaries" under ERISA cases. Such transfers of plan assets without an obligation to pay or without receiving fair market value for them constitute a breach of fiduciary duty. See, *e.g.*, *Reich v. Compton*, 57 F.3d 270, 290-91 (3d Cir. 1995) (plaintiffs stated a claim for breach of duty of loyalty where trustees sold a promissory note at well below its accounting value, to serve plan sponsor's interest rather than participants'); *Marshall v. Cuevas*, 1 Empl. Benefits Cas. (BNA) 1580 (D.P.R. 1979) (trustees making gratuitous payments to widow of former trustee failed to administer solely in the interest of participants and beneficiaries). The fiduciary duty of prudence is not limited to the context of making investment decisions; it extends to plan administration. See *Brock v. Robbins*, 830 F.2d 640, 646-48 (7th Cir. 1987) (explaining how imprudent administration of a benefits plan leads to dissipation of plan assets). The duty of care is derived from trust law and includes "determining who is in fact a plan participant." *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 572 (1985). Fiduciaries likewise have a duty to preserve plan assets to satisfy both future and present claims, and to "take impartial account of the interests of all beneficiaries." *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996). Payments to a nonparticipant without any obligation to pay would dissipate plan assets. Failure to properly determine who is a plan participant would produce the same result. Accordingly, payments to a person erroneously deemed a participant would be cognizable as a breach of the duty of prudence under ERISA.

¶ 70    The first form of relief sought by the State here is an injunction against further payments to Jon Burge. The State has alleged he is a felon, with that felony "relating to or arising out of or in connection with his service as a policeman." 40 ILCS 5/5-227 (West 2012). Accordingly, in the State's view, Burge is not properly a pension recipient, and payments to him violate the Pension Code. Cessation of payments to Burge would prevent further dissipation of the fund; any recovery of amounts already paid to him would bolster the fund. The State's claim against the Board falls squarely within the field of ERISA subsections 502(a)(2)-(a)(3) and (a)(5) enforcement, and accordingly should be permitted under Pension Code section 1-115. It should be permitted to proceed in the circuit court, without application of any requirement for administrative exhaustion. Finally, regarding the Attorney General's claim for repayment of benefits wrongly paid to Burge, such an action is cognizable under ERISA section 502—but only to the extent such funds are identifiable and traceable. *North American Coal Corp. v. Roth*, 395 F.3d 916, 917 (8th Cir. 2005) (noting that district court's award of restitution of a

---

[8]This language also appears in 29 U.S.C. § 1104(a)(1)(B) (2012), which is part of ERISA section 404.

[9]This provision, likewise, is nearly identical to fiduciary duties under ERISA section 404. 29 U.S.C. § 1104(a)(1)(D) (2012).

sum certain and its finding of personal liability against participant exceeded scope of equitable remedies under ERISA subsection 502(a)(3)). Pension Code section 1-115, like ERISA subsections 502(a)(2)-(a)(3) and (a)(5), authorizes equitable relief, not legal relief.

¶ 71    I would not hold, however, that the legislature intended to give the Attorney General or other listed parties *carte blanche* to relitigate every award of benefits made by the Pension Board. The legislature, in enacting the Pension Code, outlined that pension boards should be given substantial deference in making benefits decisions, and I find nothing in the legislative history of section 1-115 indicating that this deference was meant to end. The State's claim concerns a benefits decision made by the Board, and a trial court should review that decision in accordance with the deference prescribed by the Pension Code. Accord *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (holding, in ERISA section 502(a)(1) action, that plan trustees are to be given deference in their interpretations of the plan where the plan grants trustees the power to construe plan provisions). Rather than being guided by an ERISA plan, the Board is guided by the Pension Code. Under the Pension Code, the Board has been granted deference in the form of the Administrative Review Law applying to its administrative decisions, including benefits decisions. 40 ILCS 5/5-228 (West 2012). Where courts review administrative decisions, factual findings are reviewed as to whether they are against the manifest weight of the evidence. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386-87 (2010). Pure questions of law are reviewed *de novo*. *Id.* at 387. On a mixed question of law and fact, the determination of an administrative agency is reviewed for clear error. *Id.* Where the Attorney General, a participant, a beneficiary, or a fiduciary brings a challenge that states a claim for a fiduciary breach arising from a benefits decision, the pension board's benefits decision is to be presumed correct. Even where a challenger has alleged that a benefits decision violates some provision of the Pension Code or other fiduciary duty, such a challenger would still face a high bar to survive a motion for dismissal or summary judgment. Where, as here, the decision to be reviewed is a deadlock on whether to terminate, a court would essentially review for clear error the Board's tie-vote determination that Burge's benefits would continue.

¶ 72    The majority opinion purports to answer "who decides whether the pension benefits should be terminated." The majority's decision is much broader than that—the majority decides that benefit decisions by the Board are immune to challenge by the Attorney General. The inevitable additional consequence is that the Board's decisions favoring a participant or beneficiary are immune to challenge by anyone at any time, no matter how erroneous they might be, so long as those decisions are not disloyal.

¶ 73    The majority addresses some of the points raised in this dissent. For example, the majority rejects the notion that the circuit court could view a pension board's payments to a nonparticipant as a breach of the duty of loyalty. *Supra* ¶ 41. Yet the majority declines entirely to address the discussion of how payments to Burge might constitute a breach of the duty of prudence, or the duty to obey the Pension Code. 40 ILCS 5/1-109 (West 2012). The majority's disregard of these duties, while allowing for challenges for disloyalty, creates an artificial distinction without tether to the statute. Trustees can breach fiduciary duty without self-dealing or disloyalty, yet the majority opinion offers no avenue for a court to review such breaches.

¶ 74    The majority also calls up a specter of no one being willing to serve on pension boards, if trustees might become personally obligated to reimburse the pension fund for an honest error.

- 21 -

*Supra* ¶ 42. But the legislature has already addressed that fear. Section 1-107 allows pension boards to indemnify for conduct constituting simple negligence. 40 ILCS 5/1-107 (West 2012). It likewise provides that a board may not indemnify trustees for "wilful misconduct and gross negligence." *Id.* The legislature, by outlining how much indemnification boards may offer, clearly contemplated that trustees might be subject to suit for errors—it included section 1-107 to prevent the exact problem the majority claims will occur if sections 1-114 and 1-115 are given their plain meaning. The majority effectively creates an enhanced mental state requirement for section 1-114—"bad faith, self-dealing or *** similar wrongdoing." *Supra* ¶ 40. Further, the majority's inclusion of " 'bad intent' " fiduciary breaches under section 1-115 and exclusion of prudence and Pension Code breaches implicitly provides that Board fiduciaries are now immunized to challenge for even gross negligence, a breach for which section 1-107 would not even permit indemnification. For fear of making sections 1-114 and 1-115 too stringent against fiduciaries, the majority hinders those sections from holding fiduciaries accountable under seven chapters of the Pension Code.

¶ 75    The majority opinion makes much of the State's complaint not characterizing payments to Burge as a fiduciary breach. I disagree that the complaint does not state the basis of a complaint for fiduciary breach. The complaint states that "[b]y continuing to pay public pension benefits to Jon Burge following three felony convictions relating to, arising out of, and in connection with his service as a police officer, Defendant Board and Defendant Trustees are violating Section 227 of Article 5 of the Illinois Pension Code," and asks for injunctive relief requiring the Board "to comply with Section 5-227." Section 1-109 is not mentioned in the complaint, but it imposes upon the Board a fiduciary duty to administer "[i]n accordance with the provisions of the Article of the Pension Code governing the retirement system or pension fund." 40 ILCS 5/1-109(d) (West 2012). The complaint both alleges a violation of the Pension Code and asks for an injunction requiring the Board to comply with the Code. The Board has a fiduciary duty to administer in accordance with the Code. It is no stretch to find the State has, in its brief complaint, alleged the basis for a breach of fiduciary duty. The majority's resolution suggests a rote allegation of fiduciary disloyalty in the complaint would have granted the circuit court subject-matter jurisdiction. Yet a similar allegation of fiduciary imprudence or the already-present allegation of a fiduciary violating the Pension Code would not suffice. I cannot agree with this reasoning.

¶ 76    I do not take issue with the majority opinion's review of the appellate court's analysis of Pension Code section 5-182.

¶ 77    The Attorney General sought here to bring an enforcement action under Pension Code section 1-115, claiming that payments to Jon Burge violated section 5-227. Because such claims are cognizable under the federal model for Pension Code section 1-115, they should be cognizable under Pension Code section 1-115. This result carries out the legislative intent that participants, beneficiaries, fiduciaries, and the Attorney General have a role in ensuring pension boards live up to their fiduciary duties. I would reject the State's offered explanation of concurrent jurisdiction as allowing too broad a range of claims. Limiting Pension Code section 1-115 to those claims cognizable under ERISA subsections 502(a)(2)-(a)(3) and (a)(5) also avoids writing administrative review out of the statute or compromising the Board's "exclusive original jurisdiction" over decisions relating to the fund. It is only where a decision by the Board can be characterized as a failure of fiduciary duty remediable by ERISA subsections 502(a)(2)-(a)(3) or (a)(5) that the Board's exclusive original jurisdiction and

requirement of administrative review would give way. In those situations, the listed persons could bring an action in the circuit court. Even then, the Board's benefits decisions should still receive deference as prescribed in section 5-228.

¶ 78    I agree with the majority's conclusion that the impact on fiscal certainty of the fund "is a determination for the legislature," (*supra* ¶ 34)—but I believe the legislature has already spoken. The legislature intended that section 1-115 provide for enforcement, in circuit court, of fiduciary responsibilities. To do so, it borrowed ERISA's fiduciary roles and its fiduciary enforcement mechanism. Reading either Pension Code section 1-115 or section 5-189 too broadly creates irreconcilable conflicts in the Pension Code. The majority opinion makes no attempt to harmonize the two sections. In doing so, it misses legislative history that fairly conclusively signals the legislature's intent. I respectfully dissent.

¶ 79    JUSTICE KILBRIDE joins in this dissent.


¶ 80    JUSTICE FREEMAN, dissenting:

¶ 81    The majority holds that Illinois circuit courts lack jurisdiction to enjoin a violation of section 5-227 of the Illinois Pension Code (Pension Code), where the alleged violation results from a decision relating to a claimant's entitlement to pension benefits. I disagree and would find that circuit courts have concurrent jurisdiction over such claims where the Retirement Board of the Policemen's Annuity and Benefit Fund of Chicago also has authority to address the same matter. Therefore, I respectfully dissent.

¶ 82    As observed by the majority, "[s]ubject matter jurisdiction refers to the court's power to hear and determine cases of the general class to which the proceeding in question belongs. [Citation.]" (Internal quotation marks omitted.) *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 27. Except in certain particular circumstances, circuit courts "have original jurisdiction of all justiciable matters." Ill. Const. 1970, art. VI, § 9; see also *People v. NL Industries*, 152 Ill. 2d 82, 96 (1992). The legislature cannot preclude or limit the jurisdiction of the circuit courts, except where it enacts a comprehensive statutory scheme that creates rights having no common law counterpart and explicitly vests original jurisdiction in an administrative agency. *Crossroads Ford Truck Sales, Inc.*, 2011 IL 111611, ¶ 27; *NL Industries*, 152 Ill. 2d at 96-97. The determination of whether jurisdiction over a particular matter is exclusive in the administrative agency or is concurrent in the circuit courts is a question of statutory interpretation. *Crossroads Ford Truck Sales, Inc.*, 2011 IL 111611, ¶ 27.

¶ 83    The primary goal of statutory construction is to ascertain and give effect to the intent of the legislature. *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL 114811, ¶ 37; *Jahn v. Troy Fire Protection District*, 163 Ill. 2d 275, 282 (1994). The best evidence of this intent is the language of the statute, which must be given its plain and ordinary meaning. *Hooker*, 2013 IL 114811, ¶ 37. The court should not depart from the plain meaning of a statutory provision by reading into it exceptions, limitations, or conditions that the legislature did not include. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56; *U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334, 346 (2005). Also, the court may not rewrite statutory language so it conforms to the judiciary's view of orderliness and public policy. *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 557-58 (2009).

¶ 84    When two statutes relate to the same subject and cannot be construed harmoniously, courts are guided by general rules of statutory construction to resolve the conflict. *Village of Chatham, Illinois v. County of Sangamon, Illinois*, 216 Ill. 2d 402, 431 (2005); *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 57 (1990). Specific statutory provisions will control over general provisions on the same subject. *Village of Chatham*, 216 Ill. 2d at 431; *Williams*, 139 Ill. 2d at 57. However, a more specific statute does not control where it appears that the legislature intended that a general provision would be controlling. *Village of Chatham*, 216 Ill. 2d at 432; see also *Stone v. Department of Employment Security Board of Review*, 151 Ill. 2d 257, 266 (1992); 2B Norman J. Singer, Sutherland on Statutory Construction § 51.05, at 174 (5th ed. 1992). Also, where two statutes conflict, the more recent takes precedence over the earlier because it constitutes the later expression of legislative intent. *Village of Chatham*, 216 Ill. 2d at 431; *Jahn*, 163 Ill. 2d at 282.

¶ 85    The resolution of this appeal depends upon the statutory construction of section 5-189 and section 1-115 of the Pension Code. Section 5-189, which was enacted in 1963, provides that the Board has the power to authorize the payment of any annuity, pension, or benefit granted under the Policemen's Annuity and Benefit Fund, as well as the power to increase, reduce, or suspend any such annuity, pension, or benefit where any portion thereof was granted as the result of misrepresentation, fraud, or error, provided the annuitant, pensioner or beneficiary is given notice and an opportunity to be heard regarding such action. 40 ILCS 5/5-189 (West 2012). This section was amended in 1972 to further provide that "[t]he Board shall have exclusive original jurisdiction in all matters relating to or affecting the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds." *Id.*

¶ 86    In 1982, the legislature enacted section 1-115, which created a mechanism for civil enforcement of the terms of the Pension Code. The language of section 1-115 provides as follows:

"A civil action may be brought by the Attorney General or by a participant, beneficiary or fiduciary in order to:

(a) Obtain appropriate relief under Section 1-114 of this Code;

(b) Enjoin any act or practice which violates any provision of this Code; or

(c) Obtain other appropriate equitable relief to redress any such violation or to enforce any such provision." 40 ILCS 5/1-115 (West 2012).

¶ 87    Under section 5-189, the Board has exclusive original jurisdiction over all matters relating to or affecting the Fund. Yet, section 1-115 vests the circuit courts with jurisdiction to address claims seeking to enjoin any act or practice that violates any provision of the Pension Code, provided the claim is brought by the Attorney General or by a participant, beneficiary, or fiduciary of the Fund. Section 1-115 contains no words of limitation or condition that would preclude the filing of such an action where the alleged violation relates to or affects the Fund. 40 ILCS 5/1-115(b) (West 2012). Thus, sections 1-115 and 5-189 of the Pension Code are in direct conflict. In this circumstance, we are tasked with interpreting them in a manner that best gives effect to the intent of the legislature. In so doing, the majority relies on the common rule of statutory construction that a specific provision controls over a general one. *Supra* ¶ 31. However, this approach essentially nullifies the express language of section 1-115 with regard to matters that relate to or affect the Fund.

¶ 88    I would employ another established canon of statutory construction requiring that the more recent statute takes precedence over the earlier provision, as it represents the later expression of legislative intent. *Village of Chatham*, 216 Ill. 2d at 431; *Jahn*, 163 Ill. 2d at 282. I believe that application of this rule goes further in promoting the clear intent of the legislature, the underlying purpose of section 1-115, and the preservation of the public fisc.

¶ 89    The clear and unambiguous language of section 1-115(b) grants the circuit courts jurisdiction over claims seeking to enjoin "any act or practice" that "violates any provision" of the Pension Code. 40 ILCS 5/1-115(b) (West 2012). By adopting this comprehensive language, without restriction, the legislature evinced its intent to permit the filing of a civil action based on a broad range of conduct or decisions that may constitute a violation of a provision of the Code, even where the alleged violation results from a Board adjudication regarding pension benefits.

¶ 90    This conclusion is supported by the legislative history. As noted above, section 5-189 was amended in 1972 to provide that the Board has "exclusive original jurisdiction" in all matters relating to or affecting the fund, including claims for annuities, pensions, benefits or refunds. 40 ILCS 5/5-189 (West 2012). This provision was in effect for a decade before the General Assembly took deliberate action to create the civil enforcement provision in section 1-115 in 1982. Because section 1-115(b) constitutes the later expression of legislative intent, it should control to the extent that it conflicts with section 5-189. See generally *U.S. Bank National Ass'n*, 216 Ill. 2d at 344-50; see also *Village of Chatham*, 216 Ill. 2d at 431; *Jahn*, 163 Ill. 2d at 282; *Williams*, 139 Ill. 2d at 58.

¶ 91    The obvious purpose of section 1-115 is to provide a mechanism by which an act or practice by the Board that results in a violation of the Pension Code may be remedied. Because Board proceedings are non-adversarial, a decision in favor of a claimant is not subject to challenge or administrative review. In light of the fact that there is no adverse party who can challenge a favorable decision, practices and decisions that violate the terms of the Pension Code, to the possible detriment to the public or other fund participants and beneficiaries, could persist with no method of review. Section 1-115 provides a means to correct such a decision or practice. The plain and natural meaning of section 1-115 permits the filing of an action by the Attorney General or a plan participant, beneficiary, or fiduciary to enjoin any act or practice that violates any provision of the Pension Code. Accordingly, circuit courts have concurrent jurisdiction over claims to stop a violation of the Pension Code even when the Board also has jurisdiction over the same matter. This interpretation of section 1-115(b) does not negate section 5-189 in its entirety because a person seeking to collect benefits from the Fund must pursue the Board's administrative claim process and then proceed with administrative review if those benefits are denied.

¶ 92    Moreover, the terms of section 1-115 are substantially similar to portions of section 502(a) of the Employment Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1132(a) (2006)), which permit the filing of a civil action by the Secretary of Labor or persons with an interest in the subject retirement plan to enforce the terms of the ERISA statute and of the retirement plan. Compare 29 U.S.C. §§ 1132(a)(3)(A), (5)(A) (2006), with 40 ILCS 5/1-115(b) (West 2012). The "broad" language in those "catchall" provisions has been interpreted as creating a means of obtaining equitable relief for violations of the statute, where

an adequate remedy is not provided elsewhere. See *Varity Corp. v. Howe*, 516 U.S. 489, 510, 512 (1996).

¶ 93     In my view, the legislature enacted section 1-115 to provide an important remedy that serves to protect public funds by granting the circuit courts concurrent jurisdiction to hear civil actions to enjoin acts or practices that violate the terms of the Pension Code. The interpretation adopted by the majority departs from the plain language of section 1-115 by reading into it conditions that preclude the filing of such an action where that alleged violation results from an adjudicatory decision by the Board. I cannot agree that this result is what the legislature intended.

¶ 94     Notwithstanding the views expressed above, I agree with the majority's conclusion that the appellate court erred in concluding that the Board violated section 5-182 of the Pension Code when it determined that the tie vote required the continuation of defendant Burge's pension payments.

¶ 95     I disagree with the majority's holding that the circuit court lacked jurisdiction to address the Attorney General's complaint seeking to enjoin the payment of pension benefits in violation of section 5-227 of the Pension Code. I would affirm the judgment of the appellate court, which ordered that the cause be remanded to the circuit court for further proceedings on the Attorney General's complaint. Accordingly, I respectfully dissent.